CONTINENTAL CASUALTY COMPANY v.
RESERVE INSURANCE COMPANY.

238 N. W. 2d 862.

January 16, 1976—No. 45111.

6

*Cousineau, McGuire, Shaughnessy & Anderson* and *Harold J. W. Sweet,* for appellant.

*Arthur, Chapman & McDonough* and *Lindsay G. Arthur, Jr.,* for respondent.

Heard before Sheran, C. J., and Peterson, Kelly, Yetka, Scott, and Chanak, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Plaintiff, Continental Casualty Company (Continental), appeals from a judgment on the pleadings rendered in favor of defendant, Reserve Insurance Company (Reserve). We reverse.

The following facts are stated in the pleadings, which we ac-

cept as true:[1] Reserve is the primary insurer for the city of Marshall, Minnesota, for any legal liability which it might incur under the so-called Dram Shop Act, Minn. St. 340.95, with a policy limit of $50,000. Continental is the excess liability insurer for the city with limits of $50,000 to $950,000. Both carriers issued policies covering the city of Marshall for the period September 1, 1971, to September 1, 1972.

As the result of an automobile accident on December 24, 1971, Lucille Christianson was seriously injured, and she and her husband brought suit against one Edward DeLange. He, in turn, brought a third-party action against the city of Marshall claiming the city was liable under the Dram Shop Act for an illegal sale of liquor to him by the municipal liquor store. Trial of the lawsuit commenced on January 30, 1973, with both Reserve and Continental providing defense counsel for the city.

On the second day of the trial, a settlement was reached between the plaintiffs and DeLange's insurers and Continental for $750,000. DeLange's insurance carriers would contribute $550,000, with Continental adding the remaining $200,000. Prior to settlement, Continental demanded that Reserve tender its policy limits, but Reserve refused. Continental then paid the full $200,000 on behalf of the city, reserving its right to pursue Reserve in a later action.

Subsequently, Continental instituted this action against Reserve, alleging that Reserve's failure to contribute its policy limits was a breach of its contract of insurance with the city of Marshall, evidencing bad faith. As damages, Continental sought

---

[1] Minneapolis St. Ry. Co. v. City of Minneapolis, 229 Minn. 502, 40 N. W. 2d 353 (1949), appeal dismissed, 339 U. S. 907, 70 S. Ct. 574, 94 L. ed. 1335 (1950); State v. Schurz, 143 Minn. 218, 173 N. W. 408 (1919). In ruling upon a Rule 12.03 motion, the court must consider only the pleadings themselves. The court should grant such a motion only where, giving all benefit of doubt to the nonmoving party, the pleadings create no fact question. Stephenson v. Plastics Corp. of America, Inc. 276 Minn. 400, 150 N. W. 2d 668 (1967). See, 1 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 454.

indemnity for the $50,000 allegedly due from Reserve. Reserve moved for judgment on the pleadings,[2] which the district court granted on the ground that without a prior judicial determination of the city's liability Reserve could not be held liable for refusing to pay any part of its policy limits toward the settlement.

The central issue in this case is whether and under what circumstances an excess insurer who over the objection of the primary insurer, settles a case against the insured prior to trial can recover from the primary insurer the amount of the latter's policy limits.

The threshold question is whether a primary insurer owes any duty to an excess insurer in the settlement negotiation process. It is clear that any liability insurer owes *its insured* a duty of good faith in deciding whether to accept or reject a settlement. This duty includes an obligation to view the situation as if there were no policy limits applicable to the claim, and to give equal consideration to the financial exposure of the insured. Lange v. Fidelity & Cas. Co. of New York, 290 Minn. 61, 185 N. W. 2d 881 (1971). Breach of this duty by rejecting in bad faith an offer within policy limits subjects the insurer to liability to its insured in the amount of a judgment in excess of those limits. Larson v. Anchor Cas. Co. 249 Minn. 339, 82 N. W. 2d 376 (1957); Boerger v. American Gen. Ins. Co. 257 Minn. 72, 100 N. W. 2d 133 (1959).

We hold that an excess insurer is subrogated to the insured's rights against a primary insurer for breach of the primary insurer's good-faith duty to settle. See, Peter v. Travelers Ins. Co. 375 F. Supp. 1347 (C. D. Cal. 1974). As one commentator has observed, "In the case of excess coverage, the primary insurer should be held responsible to the excess insurer for improper failure to settle, since the position of the latter is analogous to that of the insured when only one insurer is involved." R. Keeton, Insurance Law, § 7.8(d). When there is no excess insurer, the in-

---

[2] Rule 12.03, Rules of Civil Procedure.

sured becomes his own excess insurer, and his single primary insurer owes him a duty of good faith in protecting him from an excess judgment and personal liability. If the insured purchases excess coverage, he in effect substitutes an excess insurer for himself. It follows that the excess insurer should assume the rights as well as the obligations of the insured in that position.

This result is supported by important policy considerations underlying our judicial and liability insurance systems. First, when a primary insurer breaches its good-faith duty to settle within policy limits, it imperils the public and judicial interests in fair and reasonable settlement of lawsuits.[3] If the excess insurer elects to settle in spite of the primary insurer's bad-faith objections, as is alleged in this case, the excess insurer risks losing the policy-limit contributions of the primary insurer and being forced to pay the entire settlement itself, even though the settlement may have been in the overall best interest of the insured. In such a case, the incentives are against settlement. If the excess insurer must pay the entire settlement, he may save at least the amount of the primary insurer's policy limits by going to trial, since the latter would then have to pay the amount of its limits toward the judgment. A primary insurer should not be permitted to obstruct in bad faith the important settlement process.

Second, a contrary result in this case would permit an unfair distribution of losses among insurers. The insured has paid for two distinct types of coverage, undoubtedly at different rates because they involve different amounts and kinds of risks. Primary coverage is designed to cover liability from zero to certain policy limits (in this case $50,000) ; excess coverage is designed to cover liability only after those initial limits are exhausted. When a primary insurer refuses in bad faith to settle, it forces the excess insurer making a reasonable settlement to cover both

---

[3] Jallen v. Agre, 264 Minn. 369, 373, 119 N. W. 2d 739, 743 (1963); 3B Dunnell, Dig. (3 ed.), § 1519.

primary and excess liability.[4] Thus, the purposes of the different kinds of coverage and their rating structures are thwarted as the excess insurer bears the full loss and fulfills the primary insurer's duty to the insured as well as its own.[5] Whether on insurance-economics principles or general equitable principles, a party should not be made to bear a loss that rightfully belongs to another party.[6]

The bulk of the well-reasoned authority from other jurisdictions supports the existence of a duty owed by a primary to an excess carrier.[7] In the leading case of American Fidelity & Cas.

---

[4] The primary insurer submits that the excess insurer in this case acted as a gratuitous volunteer in settling and is entitled to no equitable consideration. However, the excess insurer was motivated by the same duty that should motivate all insurers—the good-faith duty to its insured. We see no equity in penalizing an excess insurer who performs its duty in contrast to a primary insurer who does not.

[5] While it is true that an excess insurer might protect itself by making a record of its own good faith and then proceeding to trial and charging the primary for the entire judgment, we think it better to avoid unnecessary litigation by encouraging fulfillment of the good-faith duty by all insurers in the settlement process.

[6] An appropriate analogy on the equitable issue in this case might be made to the law of contribution and indemnity, under which a person who bears a loss because of the wrongful conduct of another has a remedy against the latter. See, e. g., Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. 2d 843 (1960).

[7] Peter v. Travelers Ins. Co. 375 F. Supp. 1347, 1349, 1350 (C. D. Cal. 1974) and Home Ins. Co. v. Royal Ind. Co. 68 Misc. 2d 737, 327 N. Y. S. 2d 745 (1972) (using subrogation theory); American Fidelity & Cas. Co. v. All American Bus Lines, Inc. 190 F. 2d 234, 238 (10 Cir. 1951); St. Paul-Mercury Ind. Co. v. Martin, 190 F. 2d 455, 457 (10 Cir. 1951). Contra, Universal Underwriters Ins. Co. v. Dairyland Mutual Ins. Co. 102 Ariz. 518, 433 P. 2d 966, 968 (1967) (dictum).

Commentators have also supported the view we take in this case. Bloom, *Recovery against Primary Insurer by Excess Carrier for Bad Faith or Negligent Failure to Settle,* 36 Ins. Counsel J. 235; Knepper, *Relationships between Primary and Excess Carriers in Cases Where Judgment or Settlement Value Will Exhaust the Primary Coverage,* 20 Ins. Counsel J. 207. As Bloom put it: "The excess carrier's need for get-

Co. v. All American Bus Lines, Inc. 190 F. 2d 234 (10 Cir. 1951), certiorari denied, 342 U. S. 851, 72 S. Ct. 79, 96 L. ed. 642 (1951), an injured party obtained a verdict in excess of primary policy limits after the primary insurer had refused to settle. In an action brought by the excess insurer, the trial court found that the primary insurer had acted in bad faith and ordered judgment against it for its excess liability. The Court of Appeals affirmed, noting that, as between the two insurers, it would be just and equitable for the primary insurer to bear the loss occasioned by its own misconduct. 190 F. 2d 238.

But the primary insurer's main contention is that no recovery can be granted the excess insurer because there has been no adjudication of the liability of the insured in this case. It relies chiefly on St. Paul-Mercury Ind. Co. v. Martin, 190 F. 2d 455 (10 Cir. 1951), which we regard as distinguishable. In that case, the injured parties offered to settle for an amount which involved payment of $8,500 on a total policy limit of $10,000 by the primary and $1,000 by the excess insurer. The excess insurer demanded that the primary accept the settlement. Instead, the primary commenced a declaratory judgment action, asserting that it was not liable on the policy because the covered automobile was not driven with the permission of the insured. Before that action was tried, however, the primary insurer joined in

ting more cooperation from the primary carrier in cases where there is potential danger of excess judgments is becoming acute, the reason being that the value of injuries and damages has risen at a much faster rate than the rise caused by inflation or otherwise.

"A new awareness of the great potential financial recovery is present in every case, especially in the personal injury cases. Furthermore, the total quantity of cases has increased substantially and again at a rate faster than the population increase. Also, the general quality of the plaintiff's trial preparation many times has been improved since it is becoming more well known that better preparation for trial can mean substantially higher verdicts. Under these conditions, the primary carriers increasingly have less to lose in taking these excess cases to trial since they are, in effect, gambling with either the excess carrier's money or the insured's money, or both." 36 Ins. Counsel J. 237.

the settlement, stipulating that it was wise and proper, and further agreed that the action would be tried on the respective liabilities of the primary and excess insurers. The trial court found that the driver was driving with the consent of the insured, and ordered the primary insurer to pay $8,500 and the excess insurer to pay $1,000 toward the settlement. On appeal, the Court of Appeals affirmed. Although the court indicated that in cases of questionable liability the excess insurer cannot legally bludgeon the primary into tendering its policy limits, it did so on the basis that the primary insurer is required to exercise only good faith, not omniscient powers, in predicting litigation results. We intimate nothing to the contrary here. The court discussed the primary-excess relationships in the following terms (190 F. 2d 457):

"On appeal, St. Paul does not contest the ruling of the court to the effect that Martin was an insured under its policy, making it primarily liable, and Central secondarily liable for the excess insurance. We are asked to answer whether in cases of questionable liability, the excess insurer can force the primary insurer to pay its full policy limits in settlement on threat of liability for full amounts of possible judgments if the settlements are refused. The answer is no.

"*As the primary insurer, St. Paul was required under its relationship to its insured and the excess insurer, to exercise good faith in determining whether an offer of compromise of settlement should be accepted or rejected. It owed them the duty to exercise an honest discretion at the risk of liability beyond its policy limits.* American Fidelity & Casualty Co. v. All American Bus Lines, Inc., 10 Cir., 190 F. 2d 234, Boling v. New Amsterdam Casualty Co., 173 Okl. 160, 46 P. 2d 916; Nat'l Mutual Casualty Co. v. Britt, 203 Okl. 175, 200 P. 2d 407; American Fidelity & Casualty Co. v. All American Bus Lines, Inc., 10 Cir., 179 F. 2d 7; American Fidelity & Casualty Co. v. G. A. Nichols Co., 10 Cir., 173 F. 2d 830. But, it is not required to prophesy or foretell the results of litigation at its peril. If it acts in good faith and

without negligence in refusing the proffered settlement, it has fulfilled its duty to its insured, and those in privity with it. American Casualty Co. of Reading, Pa. v. Howard, 4 Cir., 187 F. 2d 322." (Italics supplied.)

In St. Paul-Mercury there was no issue of bad faith in refusing to settle on the part of the primary insurer. In fact, the primary insurer there had entered into the settlement, and the record disclosed not only that it was liable, but that it conceded the propriety of that settlement. In contrast, in the instant case, the critical issue is the alleged bad faith of the primary insurer in rejecting a settlement which it argues was improper. The court in St. Paul-Mercury expressed no opinion on whether a primary insurer is entitled to have the principal action tried before tendering its policy limits.

Our research and that of the parties has not disclosed any case in which an excess insurer has recovered from a primary insurer on a theory of bad faith without a trial and judgment in the main action at the trial court level.[8] We perceive no difficulty in allowing that action, however, since the excess insurer again is in the same position as its subrogor, the insured.[9] In

---

[8] In two of the cases we have found, courts have dealt with settlements by excess insurers after verdicts in excess of primary policy limits. Peter v. Travelers Ins. Co. 375 F. Supp. 1347 (C. D. Cal. 1974); Royal Ind. Co. 68 Misc. 2d 737, 327 N. Y. S. 2d 745 (1972). Those courts have held that an excess insurer could recover against a primary insurer which had refused to settle in bad faith.

[9] We regard the instant case as distinguishable from our prior opinions in American Surety Co. v. State Farm Mutual Auto. Ins. Co. 274 Minn. 81, 142 N. W. 2d 304 (1966), and Iowa Nat. Mutual Ins. Co. v. Universal Underwriters Ins. Co. 276 Minn. 362, 150 N. W. 2d 233 (1967). First, those cases held that the insurer's duty to defend was an independent one that each insurer owed to its insured. The duty to pay a claim, however, is, for the reasons stated in this opinion, a joint duty owed by the insurers within their respective policy limits. See, United States Fidelity & Guaranty Co. v. Tri-State Ins. Co. 285 F. 2d 579, 582 (10 Cir. 1960). If the primary insurer refuses to settle in bad faith, the settling excess insurer fulfills the duty of the primary insurer as well

such a case the insured should certainly be able to protect itself by settling a claim against it within primary policy limits, and then recovering from its primary insurer who refused to settle in bad faith. In that lawsuit the primary insurer could claim that the insured was not liable or liable for less than its policy limits and those questions could be tried by the jury along with the general issue of bad faith. Since bad-faith failure to settle occurs prior to trial, and the relevant standard involves evaluation of the insurer's decision at the time it is made and not from hindsight, we see no reason to allow the primary insurer to force a trial of the principal action. Peterson v. American Family Mutual Ins. Co. 280 Minn. 482, 486, note 2, 160 N. W. 2d 541, 544 (1968).

The primary insurer further argues that to require it to pay its underlying policy limits or some part thereof without a prior adjudication of the insured's liability would violate its constitutional rights to due process, assistance of counsel, and freedom from interference with contractual relationships. This argument is without merit. As a result of our decision, the insurer will have its day in court on the issue of bad faith. Furthermore, our decision in the instant case retains intact the standard of good faith set forth *supra*. Under that standard, if a jury found that the city of Marshall was not liable to DeLange on his third party claim, the primary carrier would be exonerated. If that jury finds that city's liability to DeLange to be less than the policy limits, the primary carrier should be exonerated in part. Thus, with no liability as a defense, the primary insurer's contractual obligations with its insured will not be impaired.[10]

---

as its own duty to the insured. Second, the court in those cases regarded the equities as balanced. For the reasons stated in this opinion, we believe the equities here favor the excess carrier if it can establish bad faith.

[10] An alternative solution might be to hold the primary insurer liable for whatever the jury determined would have been the damages in the main action, at least up to its policy limits, without requiring any determination of bad faith. At least one court has suggested the possibility

We hold that the excess insurer's complaint states a claim against the primary insurer. The alleged bad faith of the primary is an issue of fact and must be tried. In addition to a finding of bad faith, there must be a finding of liability on the part of the insured as a condition precedent to any recovery by the excess carrier.

Reversed and remanded for further proceedings consistent with this opinion.

of strict liability of insurers for excess judgments. Crisci v. Security Ins. Co. of New Haven, Conn. 66 Cal. 2d 425, 58 Cal. Rptr. 13, 426 P. 2d 173 (1967). We decline any such suggestion at this time, however, and adhere to the bad-faith standard.