**UNITED STATES FIRE INSURANCE COMPANY and United States Fidelity and Guaranty Company, Plaintiffs,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

No. 87-19-CIV-5.

United States District Court,
E.D. North Carolina,
Raleigh Division.

April 3, 1990.

Douglas E. Kingsbury, Tharrington, Smith and Hargrove, Raleigh, N.C., for U.S. Fidelity and Guar. Co.

Walter E. Brock, Jr. and Edward B. Clark, Young, Moore, Henderson & Alvis, Raleigh, N.C., for U.S. Fire Ins. Co.

Gary S. Parsons, Bailey & Dixon, Raleigh, N.C., for Nationwide Mut. Ins. Co.

## ORDER

BRITT, Chief Judge.

This matter is before the court upon the motions of plaintiffs United States Fire Insurance Company (U.S. Fire) and United States Fidelity and Guaranty Company (USF & G) for partial summary judgment and the motion of defendant Nationwide Mutual Insurance Company (Nationwide) for summary judgment. The court has considered the materials before it and the arguments of counsel and determines that plaintiffs' motions should be allowed in part and denied in part and Nationwide's motion should be denied.

### I.

The record before the court shows that on 9 July 1983 a recreational vehicle owned and operated by Charles D. Barbour was struck by a GMC bus. The bus was owned by St. Paul's United Methodist Church and its trustees (Methodist Church) and operated by an employee of the Young Men's Christian Association of Durham, North Carolina, Inc. (Durham YMCA) pursuant to a lease agreement between the Methodist Church and the Durham YMCA. Barbour and his passengers, Robert J. Stauffenberg and Jerry M. Ganey, filed actions in Durham County Superior Court in 1983 and 1984 against the Durham YMCA and the Methodist Church for personal injury and property damage. These claimants subse-

quently voluntarily dismissed the Methodist Church. The Durham YMCA brought third-party claims against Sid's 66 Service Station (Sid's 66) alleging that Sid's 66 had negligently failed to inspect and repair the bus's braking system as requested by the Durham YMCA the day before the accident.

At the time of the bus accident, liability insurance policies were in effect. First, the Methodist Church, owner of the bus, had a policy issued by Nationwide which insured the Durham YMCA as lessee and permissive user of the bus. This policy, with a single limit of $100,000, obligated Nationwide to defend the actions against the Durham YMCA and by its terms made Nationwide the primary carrier for the Durham YMCA. Second, the Durham YMCA had in effect a policy issued by USF & G which provided liability coverage in excess of that provided by the primary carrier, Nationwide, with combined bodily injury and property damage limits of $1,000,000. Third, the YMCA also had a policy issued by U.S. Fire which provided umbrella coverage in excess of the coverage under the policies by USF & G and Nationwide. Sid's 66 had a policy issued by Jefferson–Pilot Insurance Company which provided primary liability limits of $250,000 for personal injury and property damage.

Nationwide hired an attorney, George Ragsdale, to defend the actions. The combined cases proceeded to trial and resulted in jury verdicts totalling $1,556,625 against the Durham YMCA. Sid's 66 was found not negligent. After the verdict, USF & G and U.S. Fire entered a settlement agreement with the claimants on 3 March 1986 in which they paid $1,000,000 and $157,407.99 respectively. These companies also paid prejudgment and postjudgment interest in the amount of $124,456.88 each. During settlement negotiations, U.S. Fire and USF & G obtained from the Durham YMCA a full assignment of all rights the Durham YMCA may have against Nationwide.

U.S. Fire and USF & G filed this action alleging four claims for relief. First, they seek compensatory and special damages for Nationwide's alleged negligence and

failure to act in good faith and deal fairly with them in handling the underlying Durham YMCA litigation. Second, they allege they are entitled to recover the amounts paid as prejudgment and post-judgment interest in settlement of the underlying litigation. Third, they allege Nationwide violated N.C.Gen.Stat. Chapter 75 and Chapter 58, Article 3A, entitling them to treble damages and attorney's fees. Finally, they allege Nationwide acted in willful and wanton disregard of the interests of U.S. Fire and the Durham YMCA entitling plaintiffs to punitive and exemplary damages.

In its answer, Nationwide raises several defenses. By its sixth defense, Nationwide alleges that USF & G ratified Nationwide's actions in the underlying litigation, that USF & G is estopped to claim against Nationwide for failure to settle and that USF & G waived its right to claim against Nationwide for failure to settle. In its seventh defense, Nationwide alleges that even if plaintiffs were damaged by Nationwide's negligence, plaintiffs, especially USF & G, contributed to this injury by their own negligence in failing to offer to contribute sufficient sums to permit Nationwide to settle, in failing to communicate to Nationwide any knowledge of the willingness of the underlying claimants to settle and in failing to counsel and recommend that Nationwide settle the underlying litigation. By its eighth defense, Nationwide alleges that plaintiffs, especially USF & G, concurred with Nationwide's failure to settle the underlying litigation before verdict. By its ninth defense, Nationwide contends plaintiffs failed and refused to settle or to contribute sufficient sums toward settlement. In the eleventh defense, Nationwide contends the claim for punitive damages should be dismissed because such damages constitute excessive fines under the Eighth Amendment to the United States Constitution. Nationwide also filed a counterclaim against USF & G alleging that USF & G breached its own duty to the Durham YMCA and to U.S. Fire in the underlying litigation.

Nationwide moves for summary judgment on each of the claims for relief. It also contends it is entitled to summary judgment on its counterclaim against USF & G.

USF & G moves for partial summary judgment. It contends it is entitled to summary judgment on Nationwide's sixth, seventh, eighth, ninth and eleventh defenses and on Nationwide's counterclaim against it. Additionally, USF & G moves for summary judgment on the claim for prejudgment and post-judgment interest, interest on this amount and attorney's fees for Nationwide's failure to pay these sums.

U.S. Fire has also moved for partial summary judgment. It moves for summary judgment on Nationwide's seventh, eighth, ninth and eleventh defenses. It also contends it is entitled to summary judgment on the claim for prejudgment interest, post-judgment interest, interest and attorney's fees.

## II.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The party moving for summary judgment has the burden of showing that there is no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once this burden is met, the party opposing the motion must come forward to show genuine issues of material fact. *Barrett v. Craven County Board of Education,* 70 F.R.D. 466, 478 (E.D.N.C.1976). A party may not rest on mere allegations contained in its pleadings in opposition to a motion for summary judgment. *Id.*

The purpose of a motion for summary judgment is to avoid a useless trial which results in delay and expense, and while the courts should not look the other way to ignore the existence of genuine issues of material facts, neither should they

strain to find the existence of such issues where none exists.

*Id.*

### III.

In a diversity case, the court is bound by the law of the forum state. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The court must apply the law of North Carolina as set forth by the legislature or the state appellate courts. *Chrysler Credit Corp. v. Burton,* 599 F.Supp. 1313, 1316 (M.D.N.C.1984). In the absence of state appellate authority, this court must determine what the North Carolina Supreme Court would find to be the law and apply that law as it believes that court would apply it. *Id.*

### IV.

Nationwide contends it is entitled to summary judgment on plaintiffs' claims for negligence in handling of the underlying litigation because it did not owe a duty to plaintiffs. If the court should find Nationwide did owe a duty to plaintiffs, Nationwide contends it is entitled to summary judgment because it did not breach that duty. The court finds that Nationwide assumed an affirmative duty to plaintiffs in this case and that summary judgment is inappropriate on this claim.

### A.

■ Applying the principles of equitable subrogation, some courts have found the primary insurance carrier owes a duty to the excess carrier. For example, the Minnesota Supreme Court found "that an excess insurer is subrogated to the insured's rights against a primary insurer for breach of the primary insurer's good-faith duty to settle." *Continental Casualty Co. v. Reserve Insurance Co.,* 307 Minn. 5, 8, 238 N.W.2d 862, 864 (1976). As that court explained:

> When there is no excess insurer, the insured becomes his own excess insurer, and his single primary insurer owes him a duty of good faith in protecting him from an excess judgment and personal liability. If the insured purchases excess coverage, he in effect substitutes an ex-

cess insurer for himself. It follows that the excess insurer should assume the rights as well as the obligations of the insured in that position.

*Id.* at 8–9, 238 N.W.2d at 864. Other courts have found the primary carrier owes a direct duty to the excess carrier. In *Hartford Accident & Indemnity Co. v. Michigan Mutual Insurance Co.,* 93 A.D.2d 337, 462 N.Y.S.2d 175 (1983), *aff'd,* 61 N.Y.2d 569, 475 N.Y.S.2d 267, 463 N.E.2d 608 (1984), the New York court stated:

> [The primary insurer], to whom the defense of the underlying action had been entrusted, owed a primary obligation to its assured and to the excess insurer to exercise good faith in handling the defense and to safeguard the rights and interest of the excess carrier. As primary insurer, it acts as a fiduciary and is held to an exacting standard of utmost good faith. Any such right of action arises as a result of the independent and direct duty to the excess insurer and is not dependent upon equitable principles of subrogation.

*Id.* at 342, 462 N.Y.S.2d at 178. The North Carolina Supreme Court has expressly reserved ruling on the right of an excess carrier to recover from a primary carrier for the primary carrier's failure to settle or defend an action against the insured. *Fireman's Fund Insurance Co. v. North Carolina Farm Bureau Mutual Insurance Co.,* 269 N.C. 358, 363, 152 S.E.2d 513, 518 (1967).

The source of any duty owed is not material to a decision on the summary judgment motion pending in this case. The court is persuaded that a duty exists and need not determine whether North Carolina courts, if faced with this issue, would find a direct duty or a duty by equitable subrogation.

*Guiding Principles for Insurers of Primary and Excess Coverages,* to which both plaintiffs are signatories but which Nationwide has not signed, sets forth guidelines for handling insurance matters. Nationwide contends the *Guiding Principles* are not controlling and the court must look to state law to determine the parties' obli-

gations. The court finds that these principles set forth the general standards of industry practice. The principles provide that the excess carrier must not interfere with the primary's handling of the defense or do anything designed to force a settlement against the will of the primary carrier.

Moreover, by its own affirmative conduct Nationwide created a duty in this case. Nationwide undertook defense of the action. The evidence shows that USF & G specifically requested Nationwide to keep it informed and that Nationwide promised to do so. Nationwide's motion for summary judgment on the grounds that no duty exists is denied.

### B.

■ Nationwide contends that if a duty exists, it is entitled to summary judgment because it did not breach that duty. The court does not agree.

Relying on *Abernethy v. Utica Mutual Insurance Co.*, 373 F.2d 565 (4th Cir.1967), Nationwide contends plaintiffs must prove bad faith in order to show a breach of duty. Citing *Alford v. Textile Insurance Co.*, 248 N.C. 224, 103 S.E.2d 8 (1958), and *Gray v. Grain Dealers Mutual Insurance Co.*, 871 F.2d 1128 (D.C.Cir.1989) (construing North Carolina law), plaintiffs contend that mere negligence is sufficient to show a breach of duty.

For purposes of Nationwide's summary judgment motion, the court need not determine what is required to show a breach of duty in this case. The evidence before the court is conflicting but if proven would support either theory of breach. Issues of fact are for the jury to determine. Nationwide's motion for summary judgment is denied.

### V.

Nationwide moves for summary judgment on plaintiffs' claims for prejudgment and post-judgment interest. Each plaintiff also moves for summary judgment on these claims. Plaintiffs contend they are entitled to recover the amounts paid as prejudgment and post-judgment interest in settlement of the underlying litigation. They also contend they are entitled to interest on the amounts paid as prejudgment and post-judgment interest as well as attorney's fees for Nationwide's failure to pay these sums.

### A.

■ The applicable statute regarding prejudgment interest, N.C.Gen.Stat. § 24–5, was amended in 1985, but the amendment did not apply to pending litigation. 1985 N.C.Sess.Laws, c. 214, s. 2. The statute in effect at the time of the Durham YMCA litigation provided in pertinent part as follows:

> The portion of all money judgments designated by the fact-finder as compensatory damages in actions other than contract shall bear interest from the time the action is instituted until the judgment is paid and satisfied, and the judgment and decree of the court shall be rendered accordingly. The preceding sentence shall apply only to claims covered by liability insurance.

Prejudgment interest awarded pursuant to N.C.Gen.Stat. § 24–5 is a cost within the meaning of the insurance contract. *Lowe v. Tarble*, 313 N.C. 460, 464, 329 S.E.2d 648, 651 (1985). Nationwide's insurance contract with the Methodist Church provided it would pay "[a]ll costs taxed to the insured in a suit we defend." Therefore, Nationwide is liable for prejudgment interest under its contract of insurance. However, prejudgment interest may not be awarded on the amount of the judgment in excess of the insurer's liability limits. *Wagner v. Barbee*, 82 N.C.App. 640, 645, 347 S.E.2d 844, 847 (1986), *disc. rev. denied*, 318 N.C. 702, 351 S.E.2d 761 (1987). Nationwide's liability is limited to interest on the amount of the judgment which represents its insurance coverage. Plaintiffs' motions for summary judgment will be granted for that portion of the prejudgment interest accrued on Nationwide's policy coverage.

The inquiry does not end there. Plaintiffs contend Nationwide is liable for pre-

judgment interest not only on the portion of the judgment representing its liability coverage but also on the entire amount of the judgment. They contend that Nationwide's failure to exercise diligence and good faith in settling the underlying litigation entitle plaintiffs to prejudgment interest on the entire amount of the judgment. A determination of those underlying issues must, of course, await trial. So, too, must a determination of plaintiffs' rights, if any, to recover that portion of the prejudgment interest. Nationwide's motion for summary judgment on the claim for prejudgment interest is denied. Plaintiffs' motions for summary judgment on the issue of prejudgment interest on that portion of the judgment in excess of Nationwide's coverage are denied without prejudice.

### B.

■ Plaintiffs and Nationwide have also moved for summary judgment on the claim for post-judgment interest. Nationwide's insurance contract with the Methodist Church provided that it would pay "[a]ll interest accruing after the entry of the judgment in a suit we [Nationwide] defend. Our duty to pay interest ends when we pay or tender our limit of liability." On 19 December 1985, Nationwide's trial counsel, Ragsdale, wrote a letter to the attorneys representing the claimants in the Durham YMCA litigation. That letter stated:

Nationwide Mutual Insurance Company provides a basic policy of liability coverage to the Durham YMCA in the amount of $100,000, combined single limits. Nationwide hereby tenders to Messrs. Barbour, Ganey and Stauffenberg its entire coverage to satisfy the jury verdict which was returned on December 19, against the Durham YMCA in the three cases referenced above.

Please let me know if you are in a position to accept this offer.

Relying on this letter, Nationwide contends it is not liable for post-judgment interest as it tendered its policy limits on the day of the verdict. The court does not agree.

"To constitute a valid tender the offer must include the full amount the creditor is entitled to receive, including interest to the date of the tender." *Ingold v. Phoenix Assurance Co., Ltd.*, 230 N.C. 142, 147, 52 S.E.2d 366, 370 (1949). If a party tenders an amount less than the amount due, it is as if no tender had been made. *Id.* at 147–48, 52 S.E.2d at 370. "It is the universal rule that in order to constitute a valid and effectual tender of money admitted to be due, the party who makes it must allege and show that since the refusal to accept the money he has always been ready to pay the same, and must bring the amount of the tender into court." *Id.* at 148, 52 S.E.2d at 370. Nationwide's purported tender in this case was ineffective. It only offered the limits of its insurance policy; it did not offer the prejudgment interest due on that amount. As the purported tender offer was ineffective, Nationwide's liability for post-judgment interest continued. Moreover, Nationwide is liable for all post-judgment interest. Its policy makes it liable for all post-judgment interest in a suit it defends until tender.

[I]t appears that the liability policy here contains what is termed the standard interest clause. The ... cases support the view that interest clauses in automobile policies identical with or similar to the one here must be construed as creating a liability for interest on the entire judgment so as to render the insurer liable for interest on the entire amount of the judgment ..., until the amount of the policy limit, plus interest ..., has been tendered, offered, or paid.

*Mayberry v. Home Insurance Co.*, 264 N.C. 658, 666, 142 S.E.2d 626, 632 (1965). Nationwide's motion for summary judgment on the claim for post-judgment interest is denied. Plaintiffs' motions for summary judgment on this issue are allowed.

### C.

In connection with these claims for interest, plaintiffs have moved for summary judgment on their claim for interest on the sums paid as costs and interest and for attorney's fees. Plaintiffs contend they are entitled to these sums as assignee and subrogee of the Durham YMCA for Nationwide's alleged negligence and bad faith.

Plaintiffs' motions on this claim are denied without prejudice pending the presentation of evidence and jury deliberations at trial.

## VI.

Nationwide moves for summary judgment as a matter of law on plaintiffs' claims for unfair and deceptive trade practices in violation of N.C.Gen.Stat. Chapter 75 and Chapter 58, Article 3A. The question for the court is whether plaintiffs have presented sufficient evidence to withstand the motion for summary judgment either on their third-party claims or on their first-party claims as assignees of the Durham YMCA.

N.C.Gen.Stat. § 58–54.4 governs unfair methods of competition or deceptive acts or practices in the insurance industry. *Pearce v. American Defender Life Insurance Co.*, 316 N.C. 461, 468, 343 S.E.2d 174, 179 (1986). In *Ray v. United Family Life Insurance Co., Inc.*, 430 F.Supp. 1353, 1356 (W.D.N.C.1977), the court determined that the Insurance Commissioner's enforcement of Chapter 58 is not the exclusive state remedy for unfair trade practices in the insurance industry. This position has been adopted by the North Carolina state courts. *Ellis v. Smith–Broadhurst, Inc.*, 48 N.C.App. 180, 183, 268 S.E.2d 271, 273 (1980). Chapter 58 does not create a private right of action, but a violation of N.C. Gen.Stat. § 58–54.4 as a matter of law constitutes a violation of N.C.Gen.Stat. § 75–1.1. *Pearce,* 316 N.C. at 470, 343 S.E.2d at 179.

### A.

■ The court will first address plaintiffs' third-party claims against Nationwide for unfair or deceptive acts or practices. The General Assembly amended N.C.Gen. Stat. § 58–54.4 effective 1 September 1986. 1985 N.C.Sess.Laws, c. 1027, ss. 18, 58. The pre-amendment version of the statute, applicable to this case, defined certain practices as unfair and deceptive "[i]n connection with first-party claims." N.C.Gen. Stat. § 58–54.4(11) (1982). A third-party claim was not included within the Chapter 58 pre-amendment definition of unfair or deceptive acts or practices in the insurance industry.

Citing *Von Hagel v. Blue Cross and Blue Shield of North Carolina,* 91 N.C. App. 58, 370 S.E.2d 695 (1988), Nationwide contends plaintiffs must allege a violation of N.C.Gen.Stat. Chapter 58, Article 3A, The Unfair Trade Practices Article of the Insurance Statutes, in order to show a violation of Chapter 75. In that case, the plaintiff filed a claim against his insurance company for alleged unfair and deceptive trade practices in violation of the provisions of N.C.Gen.Stat. § 58–54.4(11) and N.C. Gen.Stat. § 75–1.1. The North Carolina Court of Appeals stated that "[i]n order to establish a claim for relief under G.S. 58–54.4(11), plaintiff must allege not only that defendant engaged in the prohibited acts under the statute but also that defendant engaged in the prohibited acts 'with such frequency as to indicate a general practice.'" *Von Hagel,* 91 N.C.App. at 60, 370 S.E.2d at 698 (citations omitted). Because the plaintiff had failed to allege that the acts occurred with the required frequency, the court upheld the trial court's dismissal pursuant to Rule 12(b)(6). The court did not hold that a plaintiff must allege a violation of Chapter 58 in order to state a claim under Chapter 75. Absent an explicit holding by the North Carolina courts that a plaintiff must prove a Chapter 58 violation to prove a Chapter 75 violation, this court will not impose such a requirement. Plaintiffs may bring a third party claim. The remaining question is whether plaintiffs have presented sufficient evidence of an unfair or deceptive trade act or practice under Chapter 75 to survive the motion for summary judgment.

"Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are ... unlawful." N.C.Gen.Stat. § 75–1.1(a).

Our Supreme Court has explained that a practice will be considered unfair 'when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.' 'A

party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position.' A practice will be considered deceptive 'if it has the capacity or tendency to deceive.'
*Dull v. Mutual of Omaha Insurance Co.*, 85 N.C.App. 310, 315–16, 354 S.E.2d 752, 755, *disc. rev. denied*, 320 N.C. 512, 358 S.E.2d 518 (1987) (citations omitted). Factual questions are for the jury to determine. *Winston Realty Co., Inc. v. G.H.G., Inc.*, 314 N.C. 90, 96, 331 S.E.2d 677, 681 (1985). "The determination of whether an act is unfair or deceptive is a question of law for the court." *Bernard v. Central Carolina Truck Sales, Inc.*, 68 N.C.App. 228, 230, 314 S.E.2d 582, 584, *disc. rev. denied*, 311 N.C. 751, 321 S.E.2d 126 (1984). Intent and good faith are irrelevant to a determination of whether practices are unfair or deceptive. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Contributory negligence on the part of the plaintiff is not a defense to a Chapter 75 violation. *Winston Realty*, 314 N.C. at 95, 331 S.E.2d at 678.

U.S. Fire cites several factual allegations it contends show unfair or deceptive practices: Nationwide's failure to offer its policy limits before the jury verdict; Nationwide's failure to make an adequate evaluation of the potential exposure of the Durham YMCA and consequently the excess carriers; its failure to ever make an offer of settlement; the purposeful exclusion of the excess carriers from the meeting between Nationwide and its defense counsel after the first week of trial; and Nationwide's wrongful refusal to pay prejudgment and post-judgment interest on the verdicts. USF & G points out several factors it contends show a reckless disregard for the rights and interests of the Durham YMCA and USF & G: Nationwide failed to inform USF & G that the underlying cases were calendared for trial; in response to a direct inquiry, Nationwide falsely stated that there were no developments in the cases when in fact Nationwide had recently received critical evidence on damages and the trial of the cases began that same day; Nationwide learned on 9

December that the cases had been in trial since 2 December but withheld that information from USF & G until 11 December; Nationwide failed to include USF & G in a meeting with the trial lawyers to discuss progress of the cases; Nationwide wrongfully refused to tender prejudgment and post-judgment interest on the entire principal amount of the verdicts; and Nationwide acted in reckless disregard of the rights and interests of USF & G and the Durham YMCA in refusing to settle the underlying cases in an attempt to save money off its policy limits.

Plaintiffs' allegations, if proven at trial, are the types of practices defined as unfair or deceptive by Chapter 58. "Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" and "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" are prohibited by Chapter 58 with regard to first party claims. N.C.Gen. Stat. § 58–54.4(11)c & f (1982). The court believes these practices, if found by the jury, could support a finding of unfair or deceptive acts or practices under Chapter 75. Nationwide's motion for summary judgment on the third-party claim for unfair and deceptive trade practices is denied.

### B.

Plaintiffs also allege a first-party claim against Nationwide as assignee of the YMCA's rights. As to this claim, summary judgment is also inappropriate. The same factual allegations advanced to support the third-party claim are advanced here. The court notes this first-party claim is within the prior statutory framework of an unfair or deceptive act or practice. N.C.Gen.Stat. § 58–54.4(11). The allegations, if proven at trial, could support a finding of a violation of Chapter 75.

### C.

In conclusion, Nationwide's motion for summary judgment on the unfair trade practices claim is denied. Nationwide is

not entitled to a judgment as a matter of law. Factual issues regarding the actual events are for the jury to determine before the court decides whether the facts support a finding of an unfair or deceptive act or practice.

## VII.

█ Nationwide contends it is entitled to summary judgment on plaintiffs' claims for punitive damages. The complaint alleges Nationwide acted in willful and wanton disregard of the interests of U.S. Fire and the Durham YMCA entitling plaintiffs to punitive and exemplary damages. Nationwide contends that plaintiffs must prove an intent to harm the other parties in order to show they are entitled to punitive damages. The court does not agree.

North Carolina follows the general rule that punitive or exemplary damages are not allowed for breach of contract, with the exception of breach of contract to marry. The general rule in most jurisdictions is that punitive damages are not allowed even though the breach be wilful, malicious or oppressive. Nevertheless, where there is an identifiable tort even though the tort also constitutes, or accompanies, a breach of contract, the tort itself may give rise to a claim for punitive damages.

*Newton v. Standard Fire Insurance Co.,* 291 N.C. 105, 111, 229 S.E.2d 297, 301 (1976) (citations omitted). To support an award of punitive damages, the tortious conduct must also be accompanied by some element of aggravation. *Id.* at 112, 229 S.E.2d at 301. Aggravated conduct includes malice, fraud, oppression, rudeness, insult, willfulness, caprice, and negligence to a degree that indicates a reckless indifference to the consequences. *Id.,* 229 S.E.2d at 301.

The court finds that plaintiffs have presented sufficient evidence of reckless indifference to survive the motion for summary judgment. The court cautions that a determination of whether this issue should be presented to the jury must await presentation of all the evidence at trial. Nation-

wide's motion for summary judgment on the claim for punitive damages is denied.

█ In a related motion, both USF & G and U.S. Fire seek summary judgment on Nationwide's eleventh defense. By this defense, Nationwide contends the claims for punitive damages should be dismissed because such damages constitute excessive fines under the Eighth Amendment to the United States Constitution. In *Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), the Supreme Court held that the Eighth Amendment's excessive fines clause "does not apply to awards of punitive damages in cases between private parties." *Id.* 109 S.Ct. at 2912. As Nationwide concedes, summary judgment is appropriate as to this defense.

## VIII.

█ By its counterclaim Nationwide alleges that USF & G breached its own duty to the Durham YMCA and to U.S. Fire in the underlying litigation. Nationwide contends it is entitled to summary judgment on its counterclaim. USF & G has also moved for summary judgment on the counterclaim. The court determines Nationwide's motion for summary judgment should be denied and USF & G's motion for summary judgment should be allowed.

Nationwide contends USF & G breached its duty to protect the Durham YMCA's interests. Nationwide contends USF & G had an "absolute, unqualified obligation" to defend the lawsuit against the Durham YMCA and that this duty to defend includes a duty to settle when USF & G became convinced that settlement was in the best interest of the Durham YMCA. The court does not agree.

USF & G did not have a right or duty to settle the underlying claims as long as Nationwide, the primary carrier, was in control of the litigation and refused to contribute its policy limits towards settlement. Nationwide cites *Fireman's Fund Insurance Co. v. North Carolina Farm Bureau Insurance Co., supra,* in support of its argument that USF & G had a duty to defend the Durham YMCA. That court did

**1330**

state that "[t]he obligation of each company arises out of its own, separate contract and is an absolute, unqualified undertaking to defend on behalf of [the insured] a suit brought against him." 269 N.C. at 362, 152 S.E.2d at 517. However, the court also made it clear that the insured "was entitled under the several policies to demand of each, or all, or any two, of the companies a full and complete defense against the suit so brought against him." *Id.*, 152 S.E.2d at 517. The latter statement is crucial here as the insured, the Durham YMCA, never demanded that USF & G defend the lawsuit. Indeed, when the primary insurer is called upon to defend and takes over the defense, the court is persuaded that the excess carrier not only has no duty but also has no right to insist on defending the suit. The excess carrier as well as the insured are entitled to rely on the primary carrier to defend the case—especially, as here, when the primary carrier has undertaken the defense and has promised to keep the excess carrier informed of major developments.

This same rationale applies to Nationwide's contention that USF & G had an independent duty to settle the underlying cases. As long as the primary carrier insists on going to trial and will not tender its policy limits towards settlement, the excess carrier cannot be expected to step in and settle the cases. This conclusion is not affected by Nationwide's contention that USF & G could have settled the cases on its own and sued Nationwide for contribution to the settlement. Significantly, the accepted practice in the insurance industry is that the excess carrier has no duty to step in and settle a case where the primary carrier refuses to contribute its policy limits to the settlement. The *Guiding Principles* make it clear that the excess carrier must not interfere with the primary insurer's handling of the defense or do anything designed to force a settlement against the will of the primary carrier; neither may the excess carrier be required to contribute to a settlement within the primary carrier's coverage limits. Indeed, Nationwide's own expert witness testified that in his thirty years of experience in the industry he can-

not recall a single instance in which the excess carrier settled the case while the primary carrier refused to contribute its policy limits.

Nationwide's motion for summary judgment on the counterclaim against USF & G is denied. USF & G's motion for summary judgment on the counterclaim is allowed.

### IX.

Nationwide raises several defenses in its answer. By its sixth defense, Nationwide alleges that USF & G ratified Nationwide's actions in the underlying litigation, that USF & G is estopped to claim against Nationwide for failure to settle and that USF & G waived its right to claim against Nationwide for failure to settle. In its seventh defense, Nationwide alleges that even if plaintiffs were damaged by Nationwide's negligence, plaintiffs, especially USF & G, contributed to this injury by their own negligence in failing to offer to contribute sufficient sums to permit Nationwide to settle, by failing to communicate to Nationwide any knowledge of the willingness of the underlying claimants to settle and by failing to counsel and recommend that Nationwide settle the underlying litigation. By its eighth defense, Nationwide alleges that plaintiffs, especially USF & G, concurred with Nationwide's failure to settle the underlying litigation before verdict. By its ninth defense, Nationwide contends plaintiffs failed and refused to settle or to contribute sufficient sums toward settlement. U.S. Fire has moved for summary judgment on the seventh, eighth and ninth defenses; it contends the sixth defense does not apply to it. USF & G has moved for summary judgment on each of these defenses. The court has reviewed the evidence and the contentions of each party and determines the motion should be denied.

Nationwide contends that USF & G monitored the Durham YMCA trial and agreed with Nationwide's decision not to settle them. Alternatively, Nationwide contends that if USF & G disagreed with Nationwide's decision, it should have informed Nationwide and should have requested that Nationwide contribute its policy limits toward the settlement. Plaintiffs contend

there is no evidence to support Nationwide's contentions but that the evidence shows that USF & G disagreed with Nationwide's decision and repeatedly urged Nationwide to contribute its policy limits toward settlement. As the parties' contentions indicate, there are material issues of fact as to these defenses. Plaintiffs' motions for summary judgment are therefore denied.

### X.

In summary, Nationwide's motion for summary judgment on each claim and on its counterclaim is denied. Plaintiffs' motions for summary judgment on the claim for prejudgment interest are allowed in part and denied in part without prejudice. Plaintiffs' motions for summary judgment on the claim for post-judgment interest are allowed. Plaintiffs' motions for interest on the amounts paid as prejudgment and post-judgment interest are denied without prejudice. USF & G's motion for summary judgment on the counterclaim is allowed. Plaintiffs' motions for summary judgment on the eleventh defense are allowed and their motions on the remaining defenses are denied. A determination of the amount of damages plaintiffs are entitled to recover as a result of the allowance of the motions regarding prejudgment and post-judgment interest is deferred for determination at the conclusion of the trial.