

# SUPREME COURT OF MISSOURI
## en banc

SCOTTSDALE INSURANCE COMPANY )
and WELLS TRUCKING, INC., )
                               )
                 Appellants, )
v.                                  )      No. SC93792
                               )
ADDISON INSURANCE COMPANY and )
UNITED FIRE & CASUALTY COMPANY, )
                               )
                Respondents. )

APPEAL FROM THE CIRCUIT COURT OF LINN COUNTY
The Honorable Gary E. Ravens, Judge

*Opinion issued December 9, 2014*

Wells Trucking, Inc., and its excess insurer, Scottsdale Insurance Company, filed suit against Wells Trucking's primary insurer, United Fire & Casualty Company and its wholly owned subsidiary, Addison Insurance Company, (collectively United Fire), asserting United Fire acted in bad faith in refusing to settle within its policy limits a wrongful death action against Wells Trucking. Scottsdale pleaded alternative theories allowing it to raise the bad faith refusal to settle claim, including: (1) assignment from Wells Trucking; (2) conventional subrogation; (3) equitable subrogation; and (4) a duty of good faith owed directly to Scottsdale. The trial court sustained United Fire's motion for summary judgment on Wells Trucking's and Scottsdale's claims, finding that an excess insurer cannot recover from a primary insurer under a claim of bad faith refusal to settle and that bad faith refusal to settle could not be proven because United Fire settled

the claim against Wells Trucking and paid its policy limits and Wells Trucking did not suffer an excess judgment. On appeal, this Court finds that an insurer's ultimate settlement for its policy limits does not negate the insurer's earlier bad faith refusal to settle and that an excess judgment is not essential to a bad faith refusal to settle action. Therefore, because United Fire failed to negate essential elements of a bad faith refusal to settle action, it was not entitled to judgment against Wells Trucking. United Fire was also not entitled to judgment against Scottsdale because Scottsdale could pursue Wells Trucking's claim for bad faith refusal to settle under the theories of assignment, conventional subrogation, and equitable subrogation. The judgment is reversed, and the case is remanded.

## Factual and Procedural Background

In August 2007, a Wells Trucking employee was operating a truck pulling a flatbed trailer when he was involved in an automobile accident that resulted in the death of another motorist. An accident reconstruction report prepared by the Missouri State Highway Patrol identified multiple factors that contributed to the accident, including the employee's speed, the employee's failure to drive in the proper lane, and the decedent's failure to yield to the employee's right of way.

At the time of the accident, Wells Trucking had a primary insurance policy with United Fire that had a liability limit of $1 million. Wells Trucking also had an excess insurance policy with Scottsdale with a liability limit of $2 million. The Scottsdale policy specified that it would not apply unless and until the underlying United Fire policy was exhausted. The Scottsdale policy also provided that if Wells Trucking had any rights

to recover any payment Scottsdale made under the policy, those rights would be transferred to Scottsdale.

The decedent was survived by his wife and two children. After the accident, the decedent's family and United Fire entered into negotiations to settle any claims the decedent's family might have against Wells Trucking and the employee involved in the accident. The decedent's family eventually filed a wrongful death lawsuit against Wells Trucking and the employee, but settlement negotiations continued. In October 2009, United Fire, Scottsdale, and the decedent's family participated in mediation, which resulted in United Fire and Scottsdale each tendering $1 million to settle the case for a total of $2 million. Wells Trucking then assigned to Scottsdale its rights to pursue a bad faith refusal to settle claim against United Fire and agreed to pursue a bad faith failure to settle claim for the benefit of Scottsdale.

Wells Trucking and Scottsdale filed suit against United Fire for bad faith refusal to settle. Scottsdale raised five alterative theories by which it could bring a bad faith refusal to settle claim: its assignment from Wells Trucking; conventional subrogation;[1] equitable subrogation; breach of United Fire's direct duty of good faith to Scottsdale; and as a third-party beneficiary of the United Fire policy. Wells Trucking and Scottsdale also asserted that United Fire committed a prima facie tort and requested a declaratory judgment.

---

[1] Scottsdale and Wells Trucking's petition labeled this doctrine as "contractual subrogation," but it is more commonly referred to as "conventional subrogation." *See Missouri. Pub. Entity Risk Mgmt. Fund v. Am. Cas. Co. of Reading*, 399 S.W.3d 68, 74 (Mo. App. 2013).

3

In support of their claims that United Fire refused in bad faith to settle the wrongful death action, Wells Trucking and Scottsdale alleged the following:

- United Fire was notified of the decedent's family's potential claims against Wells Trucking.

- United Fire retained defense counsel to represent its interest and the interests of Wells Trucking.

- Between April and July 2008, United Fire was given numerous opportunities and extensions of time by the decedent's family to investigate the wrongful death claim.

- The information, facts, and evidence in United Fire's possession or readily available required United Fire to pay up to its policy limits to settle the wrongful death claim.

- Wells Trucking demanded that United Fire settle within its policy limits.

- United Fire "willfully, deliberately, maliciously and tortiously failed and refused to [settle for its policy limits], and instead made very low and unreasonable settlement offers . . . at a fraction of its $1 million limits, thereby breaching its good faith obligations."

- "Because of United Fire's bad faith failure to settle the [wrongful death claim] within its policy limits, in July 2008, [the decedent's family] was compelled to file a lawsuit . . .."

- After the filing of the lawsuit, the decedent's family provided United Fire several opportunities to settle the claim for its policy limits, including extensions of time to pay those limits.

- "During that time, . . . the facts, information and evidence in United Fire's . . . possession was by then even more compelling as to Wells Trucking's exposure to a probable judgment well in excess of the $1 million limits of the United Fire policy . . .."

- United Fire "deliberately and willfully failed and refused, in bad faith, to settle" the claim within its policy limits despite demands from Wells Trucking to settle for the policy limits.

4

- Scottsdale was informed of the lawsuit in September 2008 and, in January 2009, demanded that United Fire settle the lawsuit for up to its policy limits while it still had the opportunity to do so.

- "United Fire ignored that demand in bad faith, and instead continued to only make unreasonable and unrealistic 'low ball' offers of settlement . . . in response to policy limit demands communicated to United Fire's agents . . .."

- In March 2009, the decedent's family provided United Fire another opportunity to settle for its $1 million policy limits and agreed to leave the demand open for several months.

- United Fire again refused to settle.

- The decedent's family eventually withdrew their $1 million settlement demand, raised the demand to $3 million, and refused to accept $1 million in settlement.

- The decedent's family proposed to United Fire that if United Fire agreed to tender its $1 million policy limits toward the $3 million demand, they would negotiate with Scottsdale over payment of the additional $2 million.

- "Only then did United Fire agree . . . to tender its policy limits of $1 million toward a settlement, . . . which settlement could no longer be achieved within those $1 million limits."

- "[A]t the time it finally agreed to tender its $1 million limits, United Fire knew that amount was not sufficient to settle the [l]awsuit and that Wells Trucking and/or Scottsdale would have to contribute additional sums to settle the [l]awsuit or face exposure to a probable judgment in excess of $1 million . . .."

- At the October 2009 mediation, United Fire agreed to pay its $1 million policy limits but refused to contribute any additional amount.

- Scottsdale persuaded the decedent's family to tentatively accept a total of $2 million in settlement, with United Fire paying $1 million and Scottsdale paying the additional $1 million.

On August 30, 2012, United Fire filed a motion for summary judgment on all counts in Wells Trucking and Scottsdale's petition. In its suggestions in support of

5

summary judgment, United Fire asserted that Scottsdale, as an excess carrier, could not bring a bad faith refusal to settle claim on its own or through Wells Trucking. It further asserted that Scottsdale and Wells Trucking could not establish all the elements of a bad faith refusal to settle claim because United Fire did settle the wrongful death claim within its policy limits and because Wells Trucking never suffered an excess judgment.

The deadline for filing a response to the summary judgment motion under Rule 74.04(c)(2) was October 1, 2012.[2] Wells Trucking and Scottsdale did not file a response by the deadline or seek leave from the court to file a response beyond the deadline. Instead, Wells Trucking and Scottsdale twice obtained consent from United Fire to extend the deadline for filing a response and filed with the trial court memorandums reflecting United Fire's consent to the extensions. The first memorandum was filed on October 2, and the second was filed on October 5. Wells Trucking and Scottsdale filed their response on October 11.

On November 1, the trial court entered an interlocutory order finding that Wells Trucking and Scottsdale's response to United Fire's summary judgment motion was untimely. It deemed all allegations in United Fire's summary judgment motion admitted, pursuant to Rule 74.04(c)(2), and directed United Fire to submit a proposed form of judgment.

Wells Trucking and Scottsdale filed a motion for reconsideration of the interlocutory order in which they asserted the trial court should have exercised its

---

[2] In its interlocutory order finding Wells Trucking and Scottsdale's response to United Fire's summary judgment motion untimely, the court stated that the response was due on September 29, 2012. Because that day fell on a Saturday, the deadline was the following Monday, October 1, 2012. *See* Rule 44.01(a).

discretion under Rule 44.01(b) to enlarge the time for them to file a response to United Fire's motion for summary judgment. They further asserted that summary judgment should be denied because, in its motion for summary judgment, United Fire relied solely on allegations in Wells Trucking and Scottsdale's petition instead of producing legally cognizable evidence. Wells Trucking and Scottsdale also raised a variety of objections to United Fire's proposed form of judgment.

At a hearing on the motion to reconsider, the trial court sustained United Fire's summary judgment motion. In its written judgment entered thereafter, the trial court again found that Wells Trucking and Scottsdale's response to United Fire's motion for summary judgment was untimely, and it deemed the factual allegations in United Fire's motion admitted. The court alternatively found that Wells Trucking and Scottsdale's response did not comply with Rule 74.04(c)(2) in that they merely objected to several paragraphs in United Fire's statement of uncontroverted facts without admitting or denying those paragraphs as required. The court further stated that Wells Trucking and Scottsdale's statement of additional material facts consisted of facts that were either immaterial or did not create a genuine issue of material fact.

The trial court then found that the elements of a bad faith refusal to settle claim could not be met by Wells Trucking or Scottsdale because "United Fire did not refuse, in bad faith or otherwise, to settle the claim within the liability limits of the policy" and because "Wells Trucking was not subjected to a judgment in excess of the policy limits." The court also found that there is no duty of good faith between primary and secondary insurers, that Missouri law does not permit the assignment of an insured's bad faith

7

refusal to settle claim, and that Missouri law does not permit an excess insurer to bring an action for bad faith refusal to settle based on equitable or conventional subrogation. Lastly, the court found that Scottsdale was not a third-party beneficiary of the United Fire policy and Wells Trucking and Scottsdale could not state a claim for prima facie tort. Accordingly, the trial court entered judgment for United Fire on all counts in the petition.

Wells Trucking and Scottsdale appealed. After an opinion by the court of appeals, the case was transferred to this Court. Mo. Const. art. V, sec. 10. Wells Trucking and Scottsdale assert four points on appeal: (1) the trial court erred in granting summary judgment because Missouri law permits an excess insurer to sue a primary insurer for bad faith refusal to settle under the theories of assignment, conventional subrogation, equitable subrogation, and a direct duty of good faith from primary insurers to excess insurers; (2) the trial court erred in granting summary judgment because United Fire did not show it was entitled to judgment as a matter of law based on facts supported by "legally cognizable evidence"; (3) the trial court erred in failing to recognize its authority to enlarge the time to respond to a summary judgment motion due to excusable neglect; and (4) the trial court erred in not treating Wells Trucking and Scottsdale's motion for reconsideration as a motion for relief from a judgment due to excusable neglect.[3]

**Untimely Response to Summary Judgment Motion**

Because Wells Trucking and Scottsdale's fourth point relied on affects the scope of the record for summary judgment, it will be considered first. Wells Trucking and

---

[3] Scottsdale and Wells Trucking do not assert on appeal that the trial court erred in granting summary judgment on their prima facie tort claim, their claim for declaratory judgment, or Scottsdale's claim that it was a third-party beneficiary.

8

Scottsdale assert that the trial court erred in failing to recognize its authority to enlarge the time for Wells Trucking and Scottsdale to respond to United Fire's summary judgment motion and in not treating their motion for reconsideration of its interlocutory order as a motion for relief from the late filing of their response due to excusable neglect. A court's decision on a party's request for additional time is reviewed for an abuse of discretion. *Crabtree v. Bugby*, 967 S.W.2d 66, 72 (Mo. banc 1998), *overruled on other grounds by Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 373 (Mo. banc 2014).

In its judgment, the trial court found "that the requirements in Rule 74.04(c)(2) are mandatory" and that Wells Trucking and Scottsdale "never requested an extension of time to file [their] response[] . . . until doing so orally on Dec. 4, 2012 during the hearing on [their] motion for Reconsideration." The court then declined to enlarge the time period for Wells Trucking and Scottsdale to respond, stating that the court had no authority to do so.

The trial court misstated the law when it found it had no authority to enlarge the period for Wells Trucking and Scottsdale to respond. Rule 74.04(c)(2) requires the non-moving party to file a response to the summary judgment motion within 30 days. There is another rule, however, that gives the trial court authority to expand the time period. Rule 44.01(b) provides:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon notice and motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking

9

any action under Rules 52.13, 72.01, 73.01, 75.01, 78.04, 81.04, 81.07, and 84.035 or for commencing civil action.

While Rule 44.01(b) identifies several rules under which a time period may not be extended, Rule 74.04 is not one of them. Consequently, trial courts have authority to grant an extension of time for a non-moving party to file a response under Rule 74.04(c)(2) for excusable neglect after the time period expires. *See id.; Crabtree*, 967 S.W.2d at 72.

Nevertheless, once the original time period has expired, there must be a motion upon which the court can act. Rule 44.04(b). The trial court found that Wells Trucking and Scottsdale did not request an extension of time until it did so orally at the hearing on their motion to reconsider. While Wells Trucking and Scottsdale asserted in their written motion to reconsider that the court has discretion to grant an extension of time under Rule 44.04(b), they never requested that extension of time. Rather, Wells Trucking and Scottsdale seemed to argue that the trial court erred in not exercising its discretion earlier, notwithstanding that the court did not have a motion upon which to grant an extension of time. Contrary to their claim, the court did not abuse its discretion in not treating Wells Trucking and Scottsdale's motion for reconsideration as a motion requesting an extension of time to file a response to United Fire's summary judgment motion.

### United Fire Failed to Negate Essential Elements of Bad Faith Refusal to Settle Claim

Despite Wells Trucking and Scottsdale's failure to respond timely, United Fire bore the burden of showing that it was entitled to summary judgment. *See DeBaliviere Place Ass'n v. Veal*, 337 S.W.3d 670, 674 (Mo. banc 2011). Summary judgment is

10

appropriate only when the moving party demonstrates there is no genuine dispute regarding material facts and, under the undisputed facts, the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6); *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). A defending party can demonstrate entitlement to summary judgment by showing: (1) facts negating any of the claimant's necessary elements; (2) the claimant, after an adequate period of discovery, has been unable, and will not be able, to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute of the existence of facts required to support the defending party's properly pleaded affirmative defense. *ITT Commercial*, 854 S.W.2d at 381. This Court's review of summary judgment is *de novo*. *Roe v. Replogle*, 408 S.W.3d 759, 763 (Mo. banc 2013).

In its motion for summary judgment, United Fire asserted that Wells Trucking and Scottsdale could not prove a bad faith refusal to settle claim because the essential elements of the claim were not met. Specifically, United Fire asserted that because it ultimately tendered its $1 million policy limits to settle the claim against Wells Trucking, Wells Trucking and Scottsdale could not prove that United Fire refused to settle or that it acted in bad faith and, because the wrongful death action was settled, United Fire and Scottsdale could not prove that Wells Trucking suffered an excess judgment. The trial court agreed, finding that United Fire did not refuse, in bad faith or otherwise, to settle the claim against Wells Trucking and that Wells Trucking did not suffer an adverse

11

judgment in excess of the policy limits. Neither of these facts negates elements essential to an action for bad faith refusal to settle.[4]

This Court first recognized a bad faith refusal to settle action in *Zumwalt v. Utilities Insurance Co.*, stating:

> [W]here the insurer in a liability policy reserves the exclusive right to contest or settle any claim brought against the assured, and prohibits him from voluntarily assuming any liability or settling any claims without the insurer's consent, except at his own costs, and the provisions of the policy provide that the insurer may compromise or settle such a claim within the policy limits, no action will lie against the insurer for the amount of the judgment recovered against the insured in excess of the policy limits, unless the insurer is guilty of fraud or bad faith in refusing to settle a claim within the limits of the policy.

228 S.W.2d 750, 753 (Mo. 1950). Accordingly, a bad faith refusal to settle action will lie when a liability insurer: (1) reserves the exclusive right to contest or settle any claim; (2) prohibits the insured from voluntarily assuming any liability or settling any claims without consent; and (3) is guilty of fraud or bad faith in refusing to settle a claim within the limits of the policy.[5] *See id.*

---

[4] Wells Trucking and Scottsdale argue that United Fire failed to meet its burden under Rule 74.04(c)(1) because United Fire relied solely on allegations in the petition instead of legally cognizable evidence attached to the motion. The Court need not address this issue because, even assuming United Fire sufficiently supported its statement of uncontroverted facts under Rule 74.04(c)(1), United Fire failed to demonstrate entitlement to judgment as a matter of law under those facts.

[5] While United Fire admits that both Wells Trucking and Scottsdale demanded that United Fire settle, it asks this Court to expressly require an insured to demand that the insurer settle. United Fire cites *Bonner v. Automobile Club Inter-Insurance Exchange*, 899 S.W.2d 925, 928 (Mo. App. 1995), in which the court of appeals listed a demand for settlement by the insured as an essential element of a bad faith refusal to settle claim. *See also State Farm Fire & Cas. Co. v. Metcalf, by Wade*, 861 S.W.2d 751, 756 (Mo. App. 1993); *Dyer v. Gen. Am. Life Ins. Co.*, 541 S.W.2d 702, 704 (Mo. App. 1976). This Court has never required the insured to make a demand for settlement and declines

For the purpose of damages, United Fire argues that *Zumwalt* and other Missouri cases require that there be a judgment against the insured for an amount in excess of the policy limits. United Fire notes language in *Zumwalt* stating that where a bad faith refusal to settle action lies, the insurer will be liable "for the amount of the judgment recovered against the insured in excess of the policy limits." *Id.* In making this statement, the Court was ruling on the facts of that case because the plaintiff in *Zumwalt* was seeking to recover the amount of the excess judgment as its damages. *Id.* at 752. Similarly, in other cases discussing an insurer's liability for the excess judgment, there was an excess judgment against the insured. *See Shobe v. Kelly*, 279 S.W.3d 203, 207 (Mo. App. 2009); *Johnson v. Allstate Ins. Co.*, 262 S.W.3d 655, 658 (Mo. App. 2008); *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 74 (Mo. App. 2005); *Bonner*, 899 S.W.2d at 927; *Metcalf*, 861 S.W.2d at 752; *Ganaway v. Shelter Mut. Ins. Co.*, 795 S.W.2d 554, 560 (Mo. App. 1990); *Landie v. Century Indem. Co.*, 390 S.W.2d 558, 560 (Mo. App. 1965). United Fire interprets the holdings of these cases to require an excess judgment rather than as ruling on the facts of damages present in those cases.

This Court has described bad faith as "the intentional disregard of the *financial interest* of [the] insured in the hope of escaping the responsibility imposed upon [the insurer] by its policy." *Zumwalt*, 228 S.W.2d at 754 (emphasis added). The insurer's duty is to protect the insured's financial interests, which are impacted by an insurer's breach of duty whether the breach results in an excess judgment or an excess settlement. Requiring an excess judgment would force the insured to go to trial after its insurer

United Fire's invitation to do so. The existence of a demand is, nevertheless, highly relevant in determining whether an insurer acted in bad faith in refusing to settle.

13

wrongfully refuses to settle instead of permitting the insured to protect itself from further liability by settling. There is "no attraction to a rule that rewards bad faith by relieving the insurer of excess liability if it forces harsh choices onto an insured facing a huge judgment." *See Truck Ins. Exch.*, 162 S.W.3d at 93. Allowing a bad faith refusal to settle claim when the insured settles fosters Missouri's policy encouraging settlements. *See Lowe v. Norfolk and W. Ry. Co.*, 753 S.W.2d 891, 894-95 (Mo. banc 1988).[6]

Further, an insurer's obligation to act in good faith when settling a third-party claim is part of what the insured pays for with its premiums. *Truck Ins. Exch.*, 162 S.W.3d at 93. "When the insurer refuses to settle, the insured loses the benefit of an important obligation owed by the insurer." *Id.* This loss is suffered regardless of whether there is an excess judgment or settlement. Therefore, an excess judgment is not required to maintain an action against an insurer for bad faith refusal to settle.

Just as the absence of an excess judgment is not fatal to a bad faith refusal to settle action, neither is United Fire's ultimate settlement for its policy limits. In its motion, United Fire argued that United Fire's tendering of $1 million at the mediation negates the required elements that it refused to settle and that it acted in bad faith. United Fire's argument misses the point. A bad faith refusal to settle action arises from an insurer's breach of its duty to settle third-party claims in good faith. *Shobe*, 279 S.W.3d at 209. An insurer "may be liable over and above its policy limits if it acts in bad faith . . . in

---

[6] Several other courts have allowed a bad faith refusal to settle action when there is an excess settlement. *Fortman v. Safeco Ins. Co. of Am.*, 271 Cal. Rptr. 117, 119 (Cal. Ct. App. 1990); *Cont'l Cas. Co. v. Reserve Ins. Co.*, 238 N.W.2d 862, 867 (Minn. 1976); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Illinois Corp.*, 673 F. Supp. 267, 274 (N.D. Ill. 1987); *Williams v. Am. Family Mut. Ins. Co.*, 101 F. Supp. 2d 1337, 1341 (D. Kan. 2000); *Rupp v. Transcon. Ins. Co.*, 627 F. Supp. 2d 1304, 1324 (D. Utah 2008).

refusing to settle the claim against its insured within its policy limits *when it has a chance to do so*." *Landie*, 390 S.W.2d at 563 (emphasis added).

The crux of Wells Trucking's and Scottsdale's claims is that United Fire had numerous opportunities to fully settle the wrongful death claim against Wells Trucking for United Fire's policy limits of $1 million but that United Fire wrongfully refused to do so. Wells Trucking and Scottsdale have claimed that it was not until after United Fire acted in bad faith in refusing to settle that United Fire finally agreed to tender its $1 million policy limits. By that time, however, the decedent's family would not settle for $1 million, and United Fire's $1 million policy limits could no longer fully settle the wrongful death claim. If, as Wells Trucking and Scottsdale allege, United Fire's failure to act on the decedent's family's earlier settlement demands was in bad faith and caused Wells Trucking to lose its opportunity to fully settle the claim within United Fire's policy limits, United Fire should not be able to evade liability by later agreeing to pay its policy limits. United Fire's mere payment up to the policy limits does not make Wells Trucking whole or put Wells Trucking in the same position as if United Fire had performed its obligations to settle in good faith. *See Truck Ins. Exch.*, 162 S.W.3d at 93.

While it is undisputed that United Fire ultimately settled the claim against Wells Trucking for its policy limits, Wells Trucking and Scottsdale's petition alleged that United Fire acted in bad faith in refusing to settle earlier, which United Fire did not negate in its summary judgment motion. "[S]ummary judgment may not be granted in a case where the evidentiary facts set forth in the matters supporting the motion fail to negate a material issue raised by the pleadings, even where the opposing party has failed

15

to file an appropriate response." *Labor Disc. Ctr., Inc. v. State Bank & Trust Co. of Wellston*, 526 S.W.2d 407, 429 (Mo. App. 1975). Because the uncontroverted facts in United Fire's summary judgment motion do not show that Wells Trucking would be unable to prove the essential elements of a bad faith refusal to settle the action, United Fire was not entitled to judgment as a matter of law.

### Scottsdale May Pursue a Bad Faith Refusal to Settle Claim

While Wells Trucking, as the insured, has a claim against United Fire for bad faith refusal to settle, the remaining question is whether Scottsdale also can assert such a claim. In its motion for summary judgment, United Fire asserted Scottsdale was unable to prove the elements of a cause of action for bad faith refusal to settle because Missouri law does not recognize an action for bad faith refusal to settle between a primary insurer and an excess insurer.

It is well established that an insurer owes to its insured a duty to act in good faith in settling a claim against the insured and that the insurer may be liable to the insured when it breaches this duty. *Zumwalt*, 228 S.W.2d at 753. When an insured has a policy providing excess coverage, however, the excess insurer may be obligated to pay the excess judgment or settlement amount caused by the primary insurer's bad faith refusal to settle. Scottsdale argues that an excess insurer should be able to recover the excess judgment amount from the primary insurer for the primary insurer's bad faith refusal to settle under the theories of assignment, conventional subrogation, and equitable subrogation or by raising its own claim based on a direct duty of good faith owed by a primary insurer to an excess insurer.

16

A. Assignment

Scottsdale asserts that it may bring a bad faith refusal to settle claim because Wells Trucking assigned to Scottsdale its right to bring a bad faith refusal to settle claim against United Fire. An action for bad faith refusal to settle is a tort. *Id.* at 756. "[C]hoses in action for torts may be assigned, provided they arise from wrongs causing injury to real or personal property, or from frauds, deceits and other torts by which an estate, real or personal, has been injured, diminished, or damaged." *State ex rel. Park Nat. Bank v. Globe Indem. Co.*, 61 S.W.2d 733, 736 (Mo. 1933). Conversely, actions "for torts for personal injuries, and for wrongs done to the person, the reputation, or the feelings of the injured party, and those based on contracts of a purely personal nature, such as promises of marriage" are not assignable. *Id.*

An insurer's duty to act in good faith in settling third-party claims arises from the insurer's reservation in the policy of the exclusive right to contest and settle third-party claims. *Zumwalt*, 228 S.W.2d at 753. An action for the breach of that duty, while a tort, arises from a contract of insurance, which is not of a purely personal nature. Therefore, a bad faith refusal to settle action falls within the category of assignable torts. *See Globe Indem.*, 61 S.W.2d at 736.

This finding is consistent with the majority of other jurisdictions that have found a bad faith refusal to settle action is assignable. *See Kaplan v. Harco Nat'l Ins. Co.*, 708 So. 2d 89, 92 (Miss. Ct. App. 1998).[7] Some of these jurisdictions recognize its

---

[7] *See also Gen. Accident Fire & Life Assurance Corp. v. Little*, 443 P.2d 690, 693 n.2 (Ariz. 1968); *Comunale v. Traders & Gen. Ins. Co.*, 328 P.2d 198, 202 (Cal. 1958); *Aaron v. Allstate Ins. Co.*, 559 So. 2d 275, 277 (Fla. Dist. Ct. App. 1990); *Cotton States*

assignability because such an action is "either in contract arising from breach of implied terms of the insurance policy, or in tort for non-personal injuries." *Little*, 443 P.2d at 693 n.2; *Comunale*, 328 P.2d at 202; *Aaron*, 559 So. 2d at 277; *Groce*, 448 P.2d at 557.

United Fire, alternatively, argues that even if assignable, Wells Trucking and, therefore, Scottsdale have no action for bad faith refusal to settle. "The only rights or interests an assignee acquires are those the assignor had at the time the assignment was made. Because an assignee merely steps into the shoes of the assignor, an *assignee* must allege facts showing that the *assignor* would be entitled to relief." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 128 (Mo. banc 2010) (internal citation omitted) (emphasis in original). United Fire contends that, because Wells Trucking never suffered damages, Wells Trucking did not have a bad faith refusal to settle claim to assign to Scottsdale. This Court has already found that a cause of action for bad faith refusal to settle can be maintained even though the insurer settled for its policy limits and no judgment was entered. Because an action for bad faith refusal is assignable and because Wells Trucking has an action of bad faith refusal to settle, Scottsdale may pursue a bad faith refusal to settle claim under its assignment from Wells Trucking.

---

*Mut. Ins. Co. v. Brightman*, 568 S.E.2d 498, 501 (Ga. Ct. App. 2002); *Glenn v. Fleming*, 799 P.2d 79, 90-91 (Kan. 1990); *Terrell v. W. Cas. & Sur. Co.*, 427 S.W.2d 825, 827 (Ky. Ct. App. 1968); *Keith v. Comco Ins. Co.*, 574 So. 2d 1270, 1276 (La. Ct. App. 1991); *Med. Mut. Liability Ins. Soc'y of Maryland v. Evans*, 622 A.2d 103, 116-17 (Md. 1993); *DiMarzo v. Am. Mut. Ins. Co.*, 449 N.E.2d 1189, 1195 n.8 (Mass. 1983); *Dumas v. State Farm Mut. Auto. Ins. Co.*, 274 A.2d 781, 783 (N.H. 1971); *Groce v. Fidelity Gen. Ins. Co.*, 448 P.2d 554, 557 (Or. 1968); *Gray v. Nationwide Mut. Ins. Co.*, 223 A.2d 8, 13 (Pa. 1966); *Mello v. Gen. Ins. Co. of Am.*, 525 A.2d 1304, 1306 (R.I. 1987).

## B. Conventional Subrogation

Scottsdale also asserts that the trial court erred in concluding that an excess insurer cannot raise a bad faith refusal to settle claim against a primary insurer by way of conventional subrogation. Subrogation is the substitution of another in the place of a creditor "so that the party in whose favor subrogation is exercised succeeds to the rights of the creditor." *Messner v. Am. Union Ins. Co.*, 119 S.W.3d 642, 648 (Mo. App. 2003); *see also* 16 Couch 3d, section 222:5. Subrogation is classified as either equitable, the right to which is imposed by law, or conventional, the right to which arises from a contract. *Kroeker v. State Farm Mut. Auto. Ins. Co.*, 466 S.W.2d 105, 110 (Mo. App. 1971). Scottsdale asserts it has a right to subrogation arising out of its policy with Wells Trucking.

Scottsdale's policy with Wells Trucking states:

If [Wells Trucking] has rights to recover all or part of any payment [Scottsdale has] made under this Coverage Part, those rights are transferred to [Scottsdale]. [Wells Trucking] must do nothing after loss to impair them. At [Scottsdale's] request, [Wells Trucking] will bring "suit" or transfer those rights to [Scottsdale] and help [Scottsdale] enforce them.

This provision grants Scottsdale a right to subrogate any recovery by Wells Trucking of payment Scottsdale made under the policy. There is nothing in the nature of the relationship between primary insurer, the insured, and the excess insurer that precludes application of conventional subrogation. Because Scottsdale paid $1 million toward the settlement of the wrongful death claim under the policy, it has a right under the policy to recover that amount through Wells Trucking and, therefore, is able to invoke the doctrine of conventional subrogation. *See Anison v. Rice*, 282 S.W.2d 497, 504 (Mo. 1955). The

trial court erred in finding Scottsdale could not bring a bad faith refusal to settle claim under the doctrine of conventional subrogation.

## C. Equitable Subrogation

In addition to its right to subrogation arising out of the insurance contract, Scottsdale asserts it has a right to equitable subrogation. "Subrogation exists to prevent unjust enrichment." *Keisker v. Farmer*, 90 S.W.3d 71, 75 (Mo. banc 2002). It is used:

> [W]henever the person making the payment stands in such relations to the premises or to the other parties that his interests, recognized either by law or by equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive, either wholly or in part, for his security and benefit.

*Anison*, 282 S.W.2d at 503. Determination of whether a party has a right to equitable subrogation depends on the facts of the case. *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 134 (Mo. banc 2007).

Dating back to the nineteenth century, Missouri has recognized the doctrine of equitable subrogation. *See Evans v. Halleck*, 83 Mo. 376, 376 (Mo. 1884). In the case of first party insurance, subrogation arises when the insurer pays its insured's loss and allows the insured to recover from any third party who may have caused the loss. *Benton House, LLC v. Cook & Younts Ins., Inc.*, 249 S.W.3d 878, 882 (Mo. App. 2008). Additionally, it has been used by an excess insurer to recover from a primary insurer a portion of the insured's settlement that the primary insurer was obligated to pay under its

policy.[8] *Mo. Pub. Entity Risk Mgmt. Fund v. Am. Cas. Co. of Reading*, 399 S.W.3d 68, 76 (Mo. App. 2013).

Here, the question is whether an excess insurer who pays a third-party claim on behalf of its insured after a primary insurer refuses in bad faith to settle the claim has a right to equitable subrogation to obtain the amount paid from the primary insurer. A right to equitable subrogation belongs to "one, not a volunteer, who pays another's debt, to recover the amount paid, which in good conscious should be paid by the one primarily responsible for the loss." *Id.* at 74 (quoting 4 New Appleman Law of Liability Ins. sec. 42.01 (2012)). Scottsdale paid $1 million to settle the claim against Wells Trucking. Scottsdale did not do so as a volunteer but because it was obligated to do so under its policy with Wells Trucking. *See id.* at 75.

Additionally, good conscience requires that United Fire, not Scottsdale, be the party to suffer the loss. The excess settlement amount was allegedly caused by United Fire's bad faith. Normally, United Fire would face liability for this loss in an action brought by the insured on its own behalf because United Fire breached its duty to act in good faith. *See Zumwalt*, 228 S.W.2d at 753. An insurer's duty to act in good faith does not simply disappear when a prudent insured has obtained excess coverage. Regardless of the existence of an excess insurer, a primary insurer should be held liable when it acts in bad faith in refusing to settle within its policy limits. Therefore, Scottsdale, as the

_____

[8] While persuasive, *Missouri Public Entity Risk Management Fund* applied subrogation under different factual circumstances. In *Missouri Public Entity Risk Management Fund*, the excess insurer sought to recover amounts *within* the primary policy limits based on the primary insurer's breach of its duty to defend and its duty to settle in good faith. 399 S.W.3d at 76. Here, Scottsdale seeks to recover from United Fire an amount *in excess* of the limits based on United Fire's refusal to settle in good faith.

party that actually paid the loss caused by United Fire's bad faith, should be equitably subrogated to the rights of Wells Trucking and able to bring a bad faith refusal to settle action in the name of Wells Trucking.[9]

Equitable subrogation has been recognized by a majority of jurisdictions as a proper claim for an excess insurer to recover from a primary insurer's wrongful refusal to settle.[10] Other jurisdictions recognize that allowing an excess insurer to bring a bad faith refusal to settle claim against the primary insurer promotes the "fair and reasonable settlement of lawsuits by discouraging primary [insurers] from 'gambling' with the

---

[9] In *Ethridge*, this Court stated that equitable subrogation is "usually allowed only in extreme cases bordering on if not reaching the level of fraud." 226 S.W.3d at 134 (internal quotations omitted). *Ethridge* was not an insurance case but involved a lender who sought to place a lien on proceeds from the sale of real estate. *Id.* Assuming, without deciding, that *Ethridge* applies in other contexts, application of equitable subrogation to allow an excess insurer to sue for bad faith refusal to settle is not inconsistent with *Ethridge* because bad faith constitutes conduct "bordering on . . . the level of fraud." *Id.*

[10] *See Hartford Accident & Indem. Co. v. Aetna Cas. & Sur. Co.*, 792 P.2d 749, 754 (Ariz 1990); *Commercial Union Assurance Cos. v. Safeway Stores, Inc.*, 610 P.2d 1038, 917 (Cal. 1980); *Gen. Accident Fire & Life Assurance Corp., Ltd. v. Am. Cas. Co. of Reading, Pa.*, 390 So. 2d 761, 765 (Fla. Dist. Ct. App. 1980); *Homes Ins. Co. v. N. River Ins. Co.*, 385 S.E.2d 736, 740 (Ga. Ct. App. 1989); *Great Sw. Fire Ins. Co. v. CNA Ins. Cos.*, 557 So. 2d 966, 967 (La. 1990); *Hartford Cas. Ins. Co. v. New Hampshire Ins. Co.*, 628 N.E.2d 14, 19 n.7 (Mass. 1994); *Fireman's Fund Ins. Co. v. Cont'l Ins. Co.*, 519 A.2d 202, 205 (Md. 1987); *Commercial Union Ins. Co. v. Med. Protective Co.*, 393 N.W.2d 479, 484 (Mich. 1986); *Cont'l Cas. Co. v. Reserve Ins. Co.*, 238 N.W.2d 862, 864 (Minn. 1976); *Estate of Penn v. Amalgamated Gen. Agencies*, 372 A.2d 1124, 1126 (N.J. Super. Ct. App. Div. 1977); *Centennial Ins. Co. v. Liberty Mut. Ins. Co.*, 404 N.E.2d 759, 761 (Ohio 1980); *Maine Bonding & Cas. Co. v. Centennial Ins. Co.*, 693 P.2d 1296, 1300 (Or. 1985); *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 481-82 (Tex. 1992); *Truck Ins. Exch. of Farmers Ins. Grp. v. Century Indem. Co.*, 887 P.2d 455, 460 (Wash. Ct. App. 1995); *Greater New York Mut. Ins. Co. v. N. River Ins. Co.*, 85 F.3d 1088, 1097 (3d Cir. 1996); *Nat'l Sur. Corp. v. Hartford Cas. Ins. Co.*, 493 F.3d 752, 756-57 (6th Cir. 2007); *Certain Underwriters of Lloyd's and Cos. Subscribing to Excess Aviation Liability Ins. Policy No. FL-20959 A & B v. Gen. Accident Ins. Co. of Am.*, 909 F.2d 228, 232 (7th Cir. 1990).

excess [insurer's] money when potential judgments approach the primary insurer's policy limits." *Commercial Union Ins. Co.*, 393 N.W.2d at 483 (Mich. 1986); *see Lowe*, 753 S.W.2d at 894-95. It also prevents an unfair distribution of losses between the primary and excess insurers. *See Hartford Accident & Indem. Co.*, 792 P.2d at 753. Importantly, allowing an excess insurer to bring an action under equitable subrogation does not create a new duty or impose new obligations on the primary insurer; it merely substitutes the excess insurer for the insured. *See Am. Centennial*, 843 S.W.2d at 483. Therefore, an excess insurer may be equitably subrogated to its insured's claim against the primary insurer for refusing in bad faith to settle.

### D. Direct Duty

Lastly, Scottsdale invites this Court to recognize a cause of action for breach of a primary insurer's independent duty to settle in good faith to an excess insurer. The duty to settle in good faith arises from the insurance contract between the insured and the insurer, *Zumwalt*, 228 S.W.2d at 753, but there is no contractual relationship between primary and excess insurers. While an excess insurer's bad faith claim under equitable subrogation subjects the excess insurer's claim to any defenses the primary insurer could assert against the insured, a direct cause of action between primary and excess insurers would not necessarily be subject to those defenses and, therefore, might give excess insurers greater rights to recover than an insured. *Truck Ins. Exch. of Farmers Ins. Grp.*, 887 P.2d at 460. Because this Court finds that a bad faith refusal to settle action may be assigned and that an excess insurer may recover for an insurer's breach of its duty to the

23

insured under contractual and equitable subrogation, the Court declines to find primary insurers owe a duty directly to excess insurers.

**Conclusion**

Because an excess judgment is not an essential element and because an insurer's ultimate payment of its policy limits does not negate an earlier bad faith refusal to settle, United Fire failed to show that it was entitled to judgment as matter of law on Wells Trucking's bad faith refusal to settle claim. United Fire also was not entitled to judgment on Scottsdale's bad faith refusal to settle claim based on equitable subrogation because Scottsdale could properly pursue Wells Trucking's bad faith refusal to settle claim under the theories of assignment, contractual subrogation, or equitable subrogation. Scottsdale cannot, however, maintain a bad faith refusal to settle claim based on a duty owed directly to Scottsdale. Therefore, this Court reverses the trial court's judgment and remands the case.

_____
PATRICIA BRECKENRIDGE, JUDGE

All concur.

24