

# In the Missouri Court of Appeals
## Eastern District

**WRIT DIVISION FIVE**

| | | |
|---|---|---|
| STATE OF MISSOURI EX REL. BRITTANY TREXLER, RELATOR, | ) ) ) ) ) ) | No. ED111729 <br><br> Writ of Mandamus <br><br> CAPE GIRARDEAU COUNTY |
| vs. | ) ) ) | CIRCUIT COURT <br> Cause No. 22CG-CC00057 |
| THE HONORABLE SCOTT A. LIPKE, RESPONDENT. | ) ) ) ) ) | Filed: November 21, 2023 |

Before James M. Dowd, P.J., Kurt S. Odenwald, J., Angela T. Quigless, J.

## Opinion

This writ petition concerns Respondent's rulings in a discovery dispute in the underlying civil action for bad faith refusal to settle and defend in which Relator Brittany Trexler claims she is entitled to obtain from cross-claim defendant Consumers Insurance USA, Inc., documents in connection with the claim by plaintiff Sean Monighan that arose from an automobile accident Trexler caused while test-driving a vehicle for sale by Hitt Automotive, Consumers' named insured on its policy. Respondent allowed discovery of certain portions of the requested documents but disallowed others and Trexler claims here that those disallowed portions are discoverable and constitute the critical proof in the underlying bad faith case in which the central issues are how Consumers handled Monighan's claim against Trexler and whether Consumers

engaged in bad faith in connection with Monighan's settlement demands to Trexler, Consumers' refusal to settle, and Consumers' decision to deny Trexler a defense to Monighan's claim.

We now make our preliminary writ permanent. Respondent shall order Consumers (1) to produce to Respondent for an in camera inspection all un-redacted documents which are responsive to Trexler's discovery requests at issue here, and (2) to include a privilege log referencing any privilege it claims with respect to the un-redacted documents. Respondent is to be guided in its in camera inspection and subsequent order resolving this discovery dispute by the legal principles and holdings set forth in this opinion.

**Background**

On March 4, 2017, Trexler, while test-driving a 2005 Ford vehicle owned by Hitt Automotive, an auto dealer, caused a collision with Sean Monighan's vehicle resulting in significant personal injuries to Monighan. The Ford vehicle was insured under a liability policy issued by Consumers to Hitt Automotive with limits of $500,000 for each accident and $1,500,000 in aggregate coverage. Trexler at the time had an automobile liability policy through Progressive Insurance Company with a coverage limit of $25,000. Progressive tendered its $25,000 coverage limit to Monighan.

On September 3, 2019, Monighan's counsel notified Consumers that Monighan was making a claim against Trexler under Consumers' policy covering the Ford. On July 2, 2020, Monighan made a settlement demand under section 408.040[1] for the policy limits available to Trexler under Consumers' policy. On October 20, 2020, Consumers denied the claim based on its assertion that Trexler was not an insured under the language of its policy. In a November 16,

---

[1] All statutory references are to RSMo (2016) unless otherwise noted.

2020 letter to Monighan's counsel, Consumers manifested that "There is NO coverage for Ms. Trexler under Hitt Automotive's Auto Dealer policy."

In spring 2021, Trexler and Monighan entered into an agreement sanctioned by section 537.065 in which Monighan agreed to release Trexler from all liability arising out of the accident in exchange for Trexler assigning to Monighan her recovery (if any) in her claims against Consumers. Trexler and Monighan agreed to arbitrate Monighan's claims against Trexler and on July 9, 2021, an arbitrator awarded Monighan $4,250,000 in damages. The trial court confirmed that award in a separate proceeding on January 10, 2022.[2]

Then, on February 18, 2022, Monighan filed this equitable garnishment action against both Trexler and Consumers alleging that Trexler was an insured and that Consumers wrongly denied coverage to Trexler under the language of section 303.190.2(2) of Missouri's Motor Vehicle Financial Responsibility Law (MVFRL) for the statutory minimum $25,000 in coverage such that he was entitled to have either or both defendants satisfy the underlying judgment. For her part, Trexler asserted cross-claims against Consumers for breach of insurance contract for failing to provide her $25,000 in coverage, breach of insurance contract for failing to provide a defense, bad faith refusal to settle, bad faith refusal to defend, and negligence.

Certain discovery requests by Trexler to Consumers are the subject of this writ petition. In her first request for production, Trexler sought "[t]he complete claims file(s), including all documents, notes and communications that are part of any claims file(s) related to Brittany Trexler or the March 4, 2017 car accident in which Sean Monighan was injured generated up through October 10, 2020." A second request sought "[a]ll internal communications (written, recorded and electronic) at Consumers Insurance USA, Inc. referencing or related to Brittany

---

[2] *Monighan v. Trexler*, No. 21CG-CC00233 (Mo. Ct. 32nd Cir. January 10, 2022).

Trexler or the March 4, 2017 car accident generated up through October 10, 2020." Consumers objected to the requests claiming that it did not have a claim file for Trexler, that it only had a claim file for Hitt Automotive, and that that file was protected by the insurer-insured and attorney-client privileges.

In her motion to compel, Trexler sought (1) Consumers' entire claim file relating to the March 4, 2017 accident through the date Consumers denied coverage (October 10, 2020) irrespective of how Consumers denominated the file, (2) all other internal communications or documents related to Trexler and the March 4, 2017 accident beyond the claim file, and (3) that Consumers redact and submit a privilege log with respect to any materials, including communications between Consumers and Hitt Automotive relating to the March 4, 2017 accident, that Consumers claims to be privileged.

On November 14, 2022, the trial court ordered Consumers to produce its relevant claims handling manual and "*those portions* of the Insurance Claims File that relate to any coverage decision made by Consumers USA regarding Ms. Trexler and the March 4, 2017 accident, including any internal communications related to such which are kept separate from the claims file*, up through November 10, 2020." Trexler takes the position here that this order allowed Consumers to withhold non-privileged material including claim notes describing its claims handling activity and how it interpreted and evaluated two potential settlement opportunities.

Following the court's order, Consumers produced eleven pages of claim notes with significant redactions of notes generated during the timeframe (July – October 2020) in which Monighan had submitted his settlement demands to Consumers. Trexler responded by requesting (1) the trial court conduct an in camera inspection of the redacted claim notes and (2) that the trial court clarify the scope of its order by indicating whether Consumers was required to

4

produce *all* claim file materials and claim notes regarding its handling of the claim, other than direct communications between Consumers and Hitt. Consumers agreed to an in camera inspection but argued that the trial court's order permitted Consumers to withhold any claim notes unless it was "BOTH…related to coverage decisions made by Consumers USA regarding Ms Trexler and the March 4, 2017 accident." The trial court denied Trexler's motion on May 2, 2023 and did not conduct an in camera review.

Trexler then brought this writ petition arguing that the effect of the trial court's orders was to improperly deny Trexler discovery of materials that are not protected by the attorney-client or insurer-insured privilege and which are fundamental to the core issues in this case in which Trexler claims that Consumers refused in bad faith to defend Trexler and settle Monaghan's claim against her within the applicable policy limits.

**Standard of Review**

A writ of mandamus is appropriate where the trial court lacks authority or acts in excess of its authority. *State ex rel. Cullen v. Harrell*, 567 S.W.3d 633, 637 (Mo. banc 2019). "[I]f the trial court's discovery order is based on an erroneous conclusion of law, then the order is subject to reversal." *State ex rel. Dewey & Leboeuf, LLP v. Crane*, 332 S.W.3d 224, 231 (Mo. App. W.D. 2010). Whether matters are privileged and therefore protected from discovery presents a question of law. *State ex rel. McBride v. Dalton*, 834 S.W.2d 890, 891 (Mo. App. E.D. 1992). When the matters in dispute are neither work product nor privileged, mandamus is appropriate to review a trial court's sustention of objections to discovery because a trial court has no discretion to deny discovery of matters which are relevant to the suit or are reasonably calculated to lead to the discovery of admissible evidence. *State ex rel. Swyers v. Romines*, 858 S.W.2d 862, 863-64 (Mo. App. E.D. 1993). "An in camera review of records that may contain privileged information

5

is appropriate in order to protect one who may be subjected to harm or humiliation upon unwarranted invasion by another who is seeking information." *State ex rel. Chance v. Sweeney*, 70 S.W.3d 664, 668 (Mo. App. S.D. 2002). "The task may be undertaken by the trial judge or by a master appointed for that purpose." *Id.*

### Discussion

1. Trexler's underlying claims for bad faith.

A claim for bad faith refusal to settle will lie when a liability insurer: (1) reserves the exclusive right to contest or settle any claim; (2) prohibits the insured from voluntarily assuming any liability or settling any claims without consent; and (3) is guilty of fraud or bad faith in refusing to settle a claim within the limits of the policy. *Scottsdale Insurance Company v. Addison Insurance Company*, 448 S.W.3d 818, 827 (Mo. banc 2014). The first two elements are not at issue on this writ petition. So, the third element—whether Consumers acted in bad faith in refusing to settle this claim within the policy limits—largely defines the scope of the discovery issues before us.

The Missouri Supreme Court has described bad faith as "the intentional disregard of the financial interest of [the] insured in the hope of escaping the responsibility imposed upon [the insurer] by its policy." *Zumwalt v. Utilities Ins. Co.*, 228 S.W.2d 750, 754 (Mo. 1950). The insurer's duty is to protect the insured's financial interests, which are impacted by an insurer's breach of duty whether or not the breach results in an excess judgment. *Scottsdale*, 448 S.W.3d at 828. "When the insurer refuses to settle, the insured loses the benefit of an important obligation owed by the insurer." *Id*. An insurer "may be liable over and above its policy limits if it acts in bad faith … in refusing to settle the claim against its insured within its policy limits

6

when it has a chance to do so." *Landie v. Century Indemnity Company*, 390 S.W.2d 558, 563 (Mo. App. 1965).

With the foregoing principles in mind, we are able to draw certain conclusions with respect to the rights and responsibilities of the parties and the legal relationships among them in the context of the discovery matter before us.

*a. Trexler, Hitt, and Consumers.*

When Hitt gave Trexler permission to test-drive the vehicle on March 4, 2017, Trexler became Consumer's insured as a matter of law by operation of section 303.190.2(2) to the extent of the $25,000 in minimum liability coverage required by the MVFRL. *Dutton v. American Family Mutual Insurance Company,* 454 S.W.3d 319, 325 (Mo. banc 2015).[3]

We find the Missouri Supreme Court's opinion in *Dutton* to be on point and controlling with respect to the critical issue here—Trexler's status vis-à-vis Consumers' policy. In *Dutton*, the appellant sought to employ section 303.190.2(2)'s mandatory minimum coverage provision to obtain coverage for a vehicle she owned but had chosen not to insure under her policy with American Family. *Id.* at 323. The Court ruled against appellant because even though the MVFRL may mandate certain minimum coverage, the policy is still construed as a whole, including all limitations and exclusions.[4] Since the owned-auto exclusion in appellant's policy remained effective even after the MVFRL imposed its minimum statutory coverage, coverage for the "owned-auto" appellant was driving at the time of the accident was excluded because appellant chose not to include it in its insurance contract with American Family. *Id.* at 325.

---

[3] It remains an open question that has yet to be decided in the underlying litigation whether Trexler was also an insured under the *language* of the policy.

[4] "Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." *Id.* at 324 (quoting *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. banc 2007)).

Moreover, the *Dutton* Court took a deep dive into the MVFRL's impact when a policy fails to include in its four corners the minimum coverage the MVFRL mandates. This is the issue before us here because Consumers' policy did just that. It excluded Trexler as a permissive driver when such minimum mandatory coverage for a permissive driver is required by the MVFRL. Consumers acknowledged as much when it paid the minimum $25,000 on Trexler's behalf into the court.

The *Dutton* Court then noted that insurance policies "will not be construed inconsistently with governing statutes such as the MVFRL." *Id.* at 324. Rather, the MVFRL supplements every insurance policy even if the express terms of the policy do not provide coverage. *Id.* *Dutton* therefore construed section 303.190.2(2) to mean that if the MVFRL requires a policy issued in Missouri to provide coverage, and the policy excludes such coverage, then a provision providing such coverage will be "read into the policy" up to the MVFRL's statutory minimum for liability coverage. *Id.*

The specific verbiage of section 303.190.2(2) of the MVFRL that *Dutton* quoted as being read into the policy there is the same language that we are required by *Dutton* to read into Consumers' policy here: "[s]uch owner's policy of liability insurance … shall insure the person named therein and any other person, *as insured*, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured …." (Emphasis added).

Thus, by operation of section 303.190.2(2), at the time Trexler took the keys to the Ford as a permissive driver of Hitt, she was "an insured" under Consumers' policy for the minimum coverage of $25,000 and as an insured under the policy, we see no reason that Trexler was not vested with the same rights and responsibilities as any other insured under that policy. *See Doe Run Resources Corp. v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463, 474 (Mo.

8

App. E.D. 2013) ("The words of a policy must be given their plain and ordinary meaning consistent with the reasonable expectation and objectives of the parties, unless it is obvious that a technical meaning was intended … [w]e read insurance policies as a whole to determine the parties' intent …."  (Internal citations omitted)).

And because "insured" is a defined word under the policy, we are bound by the meaning given in the policy.  *Shelter Mut. Ins. Co. v. Sage*, 273 S.W.3d 33, 38 (Mo. App. W.D. 2008) ("The general rule is that definitions in an insurance policy are controlling as the terms used within the policy.").  Here the policy defined "insureds" when using a covered "auto" to include Hitt as the named insured and "[a]nyone else while using with your permission a covered "auto" you own …."  Then the policy purported to exclude certain persons including customers like Trexler.  It is this exclusion that section 303.190.2(2) voided because it sought to exclude coverage for permissive drivers – coverage which is mandated by section 303.190.2(2).

The policy's insuring agreement provided that Consumers "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' … to which this insurance applies, caused by an 'accident' and resulting from 'garage operations' involving the ownership, maintenance, or use of covered 'autos.'"[5]

The insuring agreement then delineated Consumers' exclusive *right* to investigate and settle claims and its *duty* to defend or settle as follows: "We may investigate and settle any claim or 'suit' as we consider appropriate.  Our duty to defend or settle ends when the [liability limit] has been exhausted by payment of judgments or settlements."

---

[5] There is no apparent dispute before us that the vehicle Trexler test drove was an auto covered under the policy.

Yet, Consumers ignores *Dutton* and section 303.190.2(2)'s mandate and continues to claim here that Trexler was not an insured based on its policy's language purporting to exclude customers. In fact, Consumers has failed to address *Dutton* or even mention it in its writ papers here. Instead, Consumers' claim here is that the *only* duty the foregoing operation of section 303.190.2(2) imposed on it was to simply pay the $25,000 statutory minimum on Trexler's behalf, which it complied with when it deposited $25,000 into the court on February 28, 2022, and that it had no duty to defend Trexler, no right to control the litigation against Trexler, and no duty to settle the claim within the policy limits on behalf of Trexler when it had the opportunity to do so in 2020.

Consumers relies principally on *State Farm Mut. Auto. Ins. Co. v. Ballmer*, 899 S.W.2d 523 (Mo. banc 1995). We find *Ballmer* readily distinguishable. In *Ballmer*, the Court found to be unenforceable under section 303.190.2(2) a household exclusion clause that State Farm relied on to deny coverage for the wrongful death of a passenger in a vehicle driven by a permissive driver. *Id.* at 526. *Ballmer* is distinct from this case because unlike here where we are required to graft onto the policy the critical language of section 303.190.2(2) that made Trexler an insured under Consumers' policy for the minimum coverage, there was no statutory language under *Ballmer* that became a part of the State Farm policy. *Id.* In contrast, *Ballmer* simply voided a household exclusion clause because it had the effect of stripping the insured driver of the statutory minimum coverage. *Id.* That is not the issue here. Moreover, "[t]his court is constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court" which is *Dutton. Anderson v. State*, 23 S.W.3d 672, 673 (Mo. App. W.D. 2000); *Kansas City Power & Light Co. v. Bibb & Assocs., Inc.*, 197 S.W.3d 147, 159 (Mo. App. W.D. 2006). Based on the foregoing, we find that Trexler is an "insured" under Consumers' policy.

10

*b. As Consumers' insured on the Monighan claim, Trexler is entitled to the claim file.*

Absent from Respondent's orders in this matter is the recognition that as Consumers' insured, Trexler is not only entitled under Rule 56.01 to the relevant documents in Consumers' possession regarding the March 4, 2017, accident, but based on Missouri Supreme Court precedent, she is generally entitled to access the entirety of Consumers' liability claim file generated in connection with the accident based on her insurer-insured relationship with Consumers. *Grewell v. State Farm Mut. Auto. Ins. Co., Inc.*, 102 S.W.3d 33, 37 (Mo. banc 2003).

The *Grewell* Court analogized the insurer-insured relationship to the attorney-client relationship noting that "[when considering a client's access to their file, this Court has previously stated that the client's files belong to the client, and not to the attorney representing the client. Here, Appellants' insurance claim file, held by Respondents, is analogous to the file of a client held by an attorney…[o]nce their relationship attained that protected status, any claims file that resulted belonged to Appellants, *and they should be provided free and open access to that file*." *Id.* (emphasis added); *State ex rel. Kilroy Was Here v. Moriarty*, 633 S.W.3d 406, 418 (Mo. App. E.D. 2021).

Similarly, here, as its insured, Trexler should have access to Consumers' claim file regarding this accident and Consumers' handling of the Monighan claim including all settlement negotiations and decisions. Therefore, we find the result of the discovery litigation below in which Consumers deemed fit to redact substantial sections of its claim file to be inconsistent with *Grewell* because the file belongs to Trexler and she is generally entitled to free and open access to it.

11

*c. Hitt's status in connection with Monighan's claim against Trexler*

We next turn to Consumers' repeated claim that Hitt is the only insured here and therefore the claim file is privileged. We disagree. It is Consumers' burden here to establish that the documents it has redacted and any other relevant documents it has refused to produce are privileged. Rule 56.01(b)(1); *State ex rel. Ford Motor Co. v. Westbrooke*, 151 S.W.3d 364, 367 (Mo. banc 2004). But it is Hitt's privilege that Consumers is relying on and asserting. *Bridges v. Bore-Flex Industries, Inc.*, 531 S.W.3d 66, 75 (Mo. App. S.D. 2017) ("The attorney-client privilege belongs to the client." (Internal citation omitted)); *see Grewell*, 102 S.W.3d at 36 ("The insurer/insured relationship, while admittedly and distinctly different, can be analogized to the relationship established between attorney and client."). So, we must determine to what extent the insurer-insured (Consumers – Hitt) privilege may apply in this case.

Initially, we observe that the named insureds on the policy appear to be Hitt Automotive and Jacob Hitt. And since neither Mr. Hitt, nor any employee or agent of Hitt Automotive, was operating the vehicle involved in the collision with Monighan, Hitt is *not* the insured with respect to Monighan's injury claim based on the record before us. Perhaps if an allegation had been made that the accident here was caused by some mechanical issue or maintenance deficiency attributable to Hitt, then Hitt might have had some liability exposure for which Hitt would be considered an insured arising from this accident. Another scenario would be a negligent entrustment situation which would invoke allegations that Trexler was an incompetent driver, habitually reckless, or intoxicated and that Hitt was aware of it and still gave her the keys to their vehicle. *Hallquist v. Smith*, 189 S.W.3d 173, 175-76 (Mo. App. E.D. 2006). We are unaware

that any of the foregoing was alleged here and we therefore fail to see how Hitt would be considered the insured on this specific claim such that the insurer-insured privilege would attach.

## Conclusion

In light of foregoing, the preliminary order in mandamus is made permanent. Respondent shall order Consumers to produce all un-redacted documents responsive to Trexler's discovery requests. Respondent is directed to conduct an in camera inspection of all materials generated by or in the possession of Consumers relating in any way to the claim brought as a result of the March 4, 2017, accident at issue in this case. The trial court will be guided by the legal principles and holdings set forth in this opinion. To the extent Consumers claims the attorney-client or insurer-insured privilege with respect to any of the responsive materials, Respondent shall order Consumers to submit a privilege log to the trial court identifying the document(s) or document excerpts over which it claims the privilege.

_____
James M. Dowd, Presiding Judge

Kurt S. Odenwald, J., and
Angela T. Quigless, J., concur.